## No. 14,257.

### HENDERSON *v*. HENDERSON.
(90 P. [2d] 968)

Decided May 1, 1939.   Rehearing denied May 29, 1939.

Mr. CLARENCE O. MOORE, for plaintiff in error.

Mr. FANCHER SARCHET, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE HILLIARD delivered the opinion of the court.

A DIVORCE proceeding. The wife, plaintiff at trial, and defendant in error, charged cruelty. The husband, defendant at trial, plaintiff in error, made denial, and by cross complaint charged the wife with cruelty and adultery, which charges she denied. On trial, a jury absolved the husband of the charge of cruelty and the wife of the charge of adultery; but the charge of cruelty against the wife was sustained by the jury. The wife moved for a new trial on the ground that the evidence did not warrant the jury finding of cruelty on her part. The motion was denied. Subsequent to such denial the court made certain orders relative to the disposition of property and payment of money. The wife assigns cross error on the denial of her motion for a new trial, and on an award to the husband of full title to a certain farm which they held in joint tenancy. The husband assigns error as to various orders awarding the wife property interests; orders requiring him to pay sums of money to or for the wife, and the award to her of an impounded fund.

The assignments will be discussed and have disposition as we proceed. We regard the wife's assignment relative to her motion for new trial as perfunctory. The motion was submitted below without argument and the assignment is barely mentioned here. Our study of the record convinces us that the conclusion of the trial court on the point was warranted.

The parties were married December 11, 1926. Each had previously been married, the wife four times (twice to one man), and the husband once. Neither was young nor inexperienced at the time of the marriage, and each possessed considerable property, the wife about $23,000 and the husband in excess of, perhaps, $150,000. At no time did either have control of the other's property in any legal sense, although, not infrequently, and for periods, the wife enjoyed the privilege of checking on the husband's bank accounts, and on occasion, as we shall see, she exercised unauthorized control over some of his property. At the time of the decree it seems clear that the wife still possessed substantially the fortune which she had at the time of her marriage, while the husband's holdings had been reduced, to quote from the trial judge, to "$98,000, plus." Whatever the fact in relation to the value of their respective holdings at the time of the decree, the court absolved each from responsibility for losses sustained by the other.

The wife previously had sued her husband for divorce, and in the subsequent reconciliation which was effected the husband deeded to her a one-half interest in a farm which he owned in Weld county, and she agreed that he should have a one-half interest in the proceeds of any sale that might be made of a certain residence property in Greeley, property in which she had invested $6,000, and he $5,000. There was no claim that the wife had any investment in the farm or that her interest was based upon any material consideration. In June, 1936, the parties again became critical of each other and the husband, having concluded to absent himself from the state for a period, went to his bank in Greeley where he had a substantial credit balance in a checking account, and on which the wife had been privileged to draw checks, cancelled her authority in that regard, and opened an account in a somewhat different manner. Some time prior to that, however, he had in his employ a man named Messick who bought livestock for him and had charge of

such stock on a ranch near Dunning, Nebraska. Before the husband left, he instructed Messick to buy other stock if in his judgment the price at which it could be purchased would indicate the likelihood of a profit, and in furtherance of that plan supplied Messick with several signed blank checks. The husband also had a man in charge of the farm in Weld county, in the operation of which it was necessary from time to time to make expenditures, and to that man he entrusted a few signed blank checks with which to make required purchases during his absence. He instructed the bank to honor such checks against the new account.

When the wife discovered the absence of her husband, and that the checking account was no longer available to her, she wrote to Messick, asking him to come to Greeley. There she induced him to turn over to her certain of the checks Henderson had left with him, and by means of these and a couple of signed blank checks she found at home, as she said, she succeeded in drawing from the banking account of her husband and depositing to her own account, funds in excess of $9,500. Then through checks on her account thus augmented, mostly in favor of her daughter, she withdrew the funds and invested them in bonds which she placed in a safety deposit box rented in her daughter's name.

The wife and Messick went to Nebraska, and, on her order the stock of which Messick had charge, and which belonged to her husband, was shipped by rail some two hundred fifty miles to Holyoke, Colorado, and placed on a ranch near there, the expense being discharged by the husband's blank checks. She also exercised other dominion over that livestock as well as over some he had elsewhere in Colorado. In the meantime she instituted the divorce suit, and while exercising unauthorized control of much of her husband's property, she caused a restraining order to be entered against him in relation to all his holdings. Shortly after the husband was served with process he made application to the court to have his

bank account restored and other orders calculated to enable him to carry on his considerable business activities. When the facts with relation to what had become of the large sum of money the wife had succeeded in withdrawing from his account, in excess of $9,500, as we have seen, had been made to appear, the court ordered that the wife "shall be allowed to use, pending the trial of the action, for her attorney fees, suit moneys and support money, the sum of not to exceed $2,000" thereof, the balance to continue in the safety deposit box rented in the name of Selma Johnstone, the wife's daughter, but that the wife "shall at all times keep intact at least $7,500 of said funds in said safety box."

Passing for the moment that part of the order awarding the wife $2,000 for the purpose stated, we think there was no justification for withholding the balance from the husband, and particularly in the manner employed to that end. Considering the property holdings of the husband and his ability to respond to whatever further orders there might be, any impounding seems to have been unnecessary; but if doubt existed in that regard we think the court should have exercised judicial control of the fund.

After the wife's motion for new trial was denied, the court made orders relative to property and payment of money. The husband was awarded the one-half interest in the Weld county farm which the wife had acquired under the circumstances narrated, and the wife was given the residence in Greeley standing in her name, to which reference has been made as the property in which she had an investment of $6,000 and the husband $5,000. We are disposed to approve those awards. It may be the wife never should have had an interest in the farm, as urged by the husband's counsel, but inasmuch as the husband deeded it to her in their adjustment of an earlier divorce suit, we think he was not entitled to have it restored out of hand. The court decreed that it should be returned to him, but at the same time required him to

yield his interest in the residence property. It is even more clear that the wife had no cause of complaint because of the farm award. She had no investment there.

The wife was awarded the furniture and furnishings in the residence decreed to her, and which the husband had purchased at a cost of some $2,500. While, if we were writing the decree in the first instance, the items mentioned would be given to the husband, we do not regard the award as an abuse of the discretion which the trial court was entitled to exercise. The furniture was bought for that particular residence, and is of more value to the wife there than it would be to the husband if it were taken away. We are not disposed to disturb the order relative to an automobile, probably now well worn, which the court awarded the wife, although we think she was not entitled to it.

The parties owned in joint tenancy a house at 13th street and 13th avenue, Greeley, in which each had an investment of $1,250. The court awarded the entire property to the wife. We disapprove that award. The wife was no more entitled to have the husband's interest in that property than would any other joint tenant.

Finally, the court awarded to the wife the balance of $7,500 impounded in the manner stated, and its accretions. This item will have attention later in our discussion.

When the foregoing orders and awards were made, counsel for the husband took orders looking to their review. Thereupon, the court ordered the husband to pay $2,000 into the registry of the court for the wife's counsel and to cover other expense which she might incur in the course of the review, and further ordered that he pay her $200 a month until the divorce decree would become final. On application here we stayed the payments thus ordered.

Considering that the wife was abundantly able to finance her suit for divorce and to support herself during its pendency and disposition, we regard the preliminary

order requiring the husband to pay her $2,000 for that purpose, or any sum, as unjust and violative of the precedents. The court apparently proceeded on the theory that since the husband had more money and property than his wife, the latter, although possessed of money, securities and clear real property, of value in excess of $20,000, was entitled, nevertheless, to have the husband primarily finance her effort to establish his domestic wrongdoing. That is not the rule. She was not "destitute, in whole or in part." *Pleyte v. Pleyte,* 15 Colo. 125, 25 Pac. 25. When it appears "that the wife is possessed of the necessary means, her application should be denied." *Daniels v. Daniels,* 9 Colo. 133, 151, 10 Pac. 657. "If the wife have a separate estate, by which she is enabled to prosecute her suit without such allowance, the court will not grant her application." *Porter v. Porter,* 41 Miss. 116. The fact that the wife, not the husband, precipitated the litigation here is not without importance. Her allegations against the husband were serious, and had they been established and decree rendered in her favor, the court could well have considered the proposition advanced by her that the husband pay the expense of the suit and reasonable alimony; but we cannot think the situation justified an order requiring the husband to advance to the wife money to be expended by her in a foray to that end.

What of the so-called impounded fund generally? The wife, as seems clear, never had the slightest right to possess the funds which entered into it. The money belonged to her husband, quite as apart from her as of any other person. At one time she had authority to check against his bank account, but not upon the theory that it was her money. That authority was formally cancelled. Thereafter she neither had nor exercised the right to draw her own checks against his account. Instead, she resorted to the illegal scheme which we have outlined, to obtain, not funds in reasonable sums as she might need, but in a vast amount. Her conduct was reprehensible.

She was within her right to institute a divorce action against her husband, and to make certain that her success to that end would leave her in position to urge the payment of alimony, court costs and counsel fees, and the like, she was entitled to ask that the funds of her husband in a reasonable amount be placed within the control of the court, to await the result of her suit. But she preferred to proceed otherwise, and the court seems to have been of the opinion that her method was to be approved. Of course, had she succeeded in establishing her divorce allegations, then she would have had basis for alimony allowance; but a jury found her charges to be unfounded, and the court approved the finding. Indeed, the same jury found that she was to blame, and the court adjudged that the husband, not she, was entitled to a divorce. She has her property, and he has what is left of his. Neither helped the other to accumulate what either possesses. The impounded fund, including the $2,000 which the court permitted her to use, belonged to the husband when she took it and belongs to him now.

It seems that because of what the wife and Messick did with relation to the husband's livestock holdings, already sufficiently stated, he brought action in conversion against the wife and Messick. The court in the divorce proceeding took cognizance of this suit and in its final orders required the husband to assign his right in the action to the wife or pay her $500 with which to finance her defense. We cannot think legality attends that order.

██ The court based its orders against the husband in part on the fact that in addition to alleging cruelty by the wife, he charged her with adultery, and that the jury only sustained the charge of cruelty. The husband's charges, in the circumstances here, as we conceive, could have no bearing on the wife's claim for alimony. Her right in that regard depended upon the result of her charges against the husband, which, as we have seen, were resolved in the husband's favor. The basis for divorce to him and orders otherwise in his favor, is that

the wife was adjudged to be guilty of cruelty. In short, it was the wife, not the husband, who was responsible for the marital rift. That the other charge made by the husband was not wholly baseless, it seems fair to say, is borne out by the fact that the court thought enough of the evidence adduced on the issue to submit it to the jury.

The court should modify and amend its decree to conform with the views we have expressed; also, considering the unusual manner in which the impounded fund was permitted to be handled, the decree should provide that to whatever extent the sum which the wife withdrew from her husband's account, with its accretions, is not available to be returned to the husband, the sum thereof constitute a lien on the wife's real estate holdings. The order for support to the wife subsequent to the verdict is to be vacated and the order for attorney fees and court costs likewise. Costs generally to be assessed to the losing party. For the purposes mentioned, and to the extent indicated, let the judgment be reversed.

Mr. Justice Young and Mr. Justice Knous concur.