[Civ. No. 15329. Second Dist., Div. Three. Mar. 2, 1948.]

BESSIE BRENNER LOEB, Respondent, v. EDWIN J.
LOEB, Appellant.

Lewinson & Armstrong and Herman F. Selvin for Appellant.

Guy T. Graves, Sheppard, Mullin, Richter & Balthis, James C. Sheppard, Cameron W. Cecil and Gordon F. Hampton for Respondent.

SHINN, Acting P. J.—This is an appeal by Edwin J. Loeb from an order awarding his former wife, Bessie Brenner Loeb, $500 per month temporary alimony and $1,500 suit money (including counsel fees) on account, in her action against him for division of their community property and for permanent support. Jurisdiction over these two matters was expressly reserved in both the interlocutory and final decrees of divorce. The latter decree was entered on March 1, 1937.

Appellant seeks a reversal of the order awarding respondent pendente lite allowances for her support and for suit money on three grounds: (1) The award of temporary support went beyond the issues presented and was therefore in excess of the court's power; (2) the showing of necessity required for both awards was not made; (3) section 142 of the Civil Code prohibits the awards. Before discussing the validity of appellant's several contentions it may be noted that the reasonableness in amount of the awards is not questioned and that appellant's ability to pay them is likewise conceded.

Appellant's first contention is not sustainable. Section 137 of the Civil Code, which is the only code section specifically authorizing pendente lite allowances for support and suit money, does so in the following terms: ''When an action for divorce is pending, the court may, in its discretion, require the husband or wife, as the case may be, to pay as alimony any money necessary to enable the wife, or husband, to support herself and her children, or to support himself and his children, as the case may be, or to prosecute or defend the action.'' The two children of the Loebs are adults and their support is not involved.

In her petition initiating these proceedings respondent prayed for, among other things, an allowance of suit money, and for ''such other and further relief'' as the court might deem equitable and proper. The matter was thereafter heard upon an order for appellant to show cause why he should not be required to pay reasonable suit money. Throughout the hearing, counsel for both parties and the trial judge indicated on various occasions that the sole issue being tried was suit money. Nevertheless, the trial judge included in his order, *sua sponte,* an award of temporary support. Appellant challenges this award as being beyond the power of the court because no application therefor was made and because appellant had no notice at any time that the issue of temporary support was involved.

It is to be noted that the applicable portion of section 137, which we have quoted in full, contains no requirement of either application or notice. There is dicta in the decisions of our courts that an award of temporary support may be made ex parte. (See *Mudd* v. *Mudd,* 98 Cal. 320, 321 [33 P. 114]; *Arnold* v. *Arnold,* 215 Cal. 613, 614 [12 P.2d 435]; *Reed* v. *Reed,* 40 Cal.App. 102, 104 [180 P. 43].) The meager authority elsewhere on the point at issue is divided. (See

note, 152 A.L.R. 445, 457.) While it undoubtedly is the better practice to grant temporary support only after application, notice, and hearing, we do not think that the trial court here, in departing from that practice, committed reversible error. The considerations governing the court's discretion in awarding temporary support are identical with those controlling its discretion in awarding suit money. (17 Am.Jur. 452; Nelson, Divorce and Annulment (2d ed. 1945), § 12.06.) The language of our statutory authority, section 137, is also identical as to the proper basis for both awards, namely, necessity. It follows that when appellant made his defense against an award of suit money, he thereby made his defense against an award of temporary support. As a consequence, he suffered no substantial prejudice from the court's failure to inform him that the court considered the question of temporary support to be before it as well. We conclude that under the circumstances of this case the trial court possessed the power to make on its own motion an award of temporary support. (Cf., *Willey* v. *Willey,* 51 Cal.App. 124, 126-7 [196 P. 101].)

■ A proper evaluation of the merit of appellant's second contention, that a sufficient showing of necessity for pendente lite allowances of support and suit money was not made, calls for a general statement of the law governing such allowances and of the facts relied upon by respondent. These allowances are not a matter of absolute right. They may be granted in the sound discretion of the trial court, but section 137 does not empower the court to award temporary support and suit money except upon a finding of necessity.

■ Appellant contends that section 137 governs exclusively. Respondent replies that the awards were made under the general equitable powers of the court in accordance with the procedure specified in section 139, as well as section 137, Civil Code. The powers of the court in matters of divorce to which these sections relate are derived therefrom, and are not within the general equity powers. *(Grannis* v. *Superior Court,* 146 Cal. 245, 255 [79 P. 891, 106 Am.St.Rep. 23].)

A discussion of the respective contentions as to the proper construction of these sections calls for an examination of the functions of such awards. ■ The manifest purposes of pendente lite allowances to a wife are to enable her to live in her accustomed manner pending the disposition of the action and to provide her with whatever is needed by her to litigate

properly her side of the controversy. *(Mudd* v. *Mudd, supra,* 98 Cal. 320, 322; *Busch* v. *Busch,* 99 Cal.App. 198, 202 [278 P. 456]; *Locke Paddon* v. *Locke Paddon,* 194 Cal. 73, 81 [227 P. 715].) If she possesses independent means sufficient for these purposes the allowances should not be granted. *(Mudd* v. *Mudd, supra.)* However, she is not required first to impair the capital of her separate estate. *(Farrar* v. *Farrar,* 45 Cal. App. 584, 586 [188 P. 289].) These principles of California law accord with the law prevailing generally elsewhere. *(Westphal* v. *Westphal,* 122 Cal.App. 379, 385 [10 P.2d 119]; Notes, 15 A.L.R. 781, 35 A.L.R. 1099; 27 C.J.S. 889, 897, 924-5; Keezer, Marriage & Divorce (3d ed. 1946), §§ 590, 591, 604.) Thus, the general rule is that the propriety of pendente lite allowances to a wife turns primarily upon the sufficiency of her showing of need for them.

■ While not denying that necessity must be established to justify an award under section 137, respondent claims that section 139 authorizes temporary awards to a divorced wife without a showing of necessity. Section 139 provides, in brief, that the court may order permanent support for the wife and children "having regard to the circumstance of the parties respectively," and that the court may from time to time modify such order. Respondent's argument in regard to section 139 is that as jurisdiction over support was expressly reserved in the final divorce decree these awards constitute a modification of that decree made pursuant to section 139. We may assume, in considering this contention, that the status of the instant litigation does not differ in principle from the more common situation in which the court by final decree makes an award of support and thereby retains jurisdiction under the statute to modify it. Respondent's position is that under the line of authority commencing with *Lamborn* v. *Lamborn,* 190 Cal. 794 [214 P. 862], these awards were made under both sections 137 and 139. The Lamborn decision held proper an award of suit money to a former wife to cover the expenses of her opposition to a reduction in her permanent support allowance upon the theory that such an award was either an additional allowance for her support as authorized by section 139, or was made during the pendency of the action as extended by section 137, or was necessary within the meaning of section 137. Like the Lamborn case, this action for permanent support and for division of the community property originates under section 139, and if permanent support is

awarded ultimately to respondent, it will be granted in conformity with section 139. But we do not interpret the Lamborn decision, as respondent apparently does, as establishing an identical basis for all awards thereunder, whether they be temporary or permanent in character. The awards here, which by their own terms are expressly pendente lite, are merely temporary in character.

Pendente lite allowances and permanent allowances differ fundamentally in function. As already stated, the purposes of pendente lite allowances to a wife or former wife are to maintain her in her accustomed manner of living pending the outcome of the action and to enable her to present her side of the controversy fully. On the other hand the object of permanent allowances is to make an equitable apportionment between the parties. This is demonstrated both by the content of section 139 and the settled interpretation given that section. Our courts have construed an award of permanent support under this section to a wife to be in the nature of compensation for the wrong done her and, in this sense, a penalty imposed upon the husband. The statutory measure of the punitive damages so awarded is to be found in "the circumstances of the parties respectively." (*Scheibe* v. *Scheibe*, 57 Cal.App.2d 336, 342 [134 P.2d 835].)

To conclude with respondent that this statutory measure for permanent allowances under section 139 applies as well to pendente lite allowances thereunder is both unsound and unwarranted. The only statute which expressly relates to pendente lite allowances is section 137. It specifies necessity as the requirement for such allowances, and in so doing it is in harmony with the laws relating to temporary support and suit money prevailing generally throughout the United States. We find no statutory authority for placing temporary allowances that might be made under section 139 on the same basis as permanent allowances. It is clear to us that the Legislature has been careful not to do this, and has recognized the difference in fundamental character of the two classes of allowances. To disregard what we recognize as a clearly expressed legislative policy would invade the field of legislation. We conclude that pendente lite allowances made under section 139 are granted on precisely the same basis as those made under section 137, that is to say, necessity. This conclusion is substantiated by an examination of the Lamborn line of authority. An inspection of the record in the Lamborn case discloses that the award at issue was made on an uncontradicted show-

ing of necessity. Our Supreme Court in its most recent enunciation of the Lamborn rule has indicated a similar understanding of its effect. (*Leupe* v. *Leupe*, 21 Cal.2d 145, 152-153 [130 P.2d 697].)

We turn now to a consideration of the evidence relied upon by respondent as establishing the propriety of these awards. Respondent has no dependents. From her testimony and her income tax returns introduced in evidence, the following facts appear. During the six months immediately preceding the hearing, respondent's living expenses, as itemized by her, averaged $460 a month, aside from income tax payments. This included a generous allowance of $100 a month for gifts, traveling, and entertainment. Respondent's estimated federal income tax amounted to an additional $200 a month, and her state income tax on the basis of her 1944 tax did not run to more than $5.00 a month. This would give respondent total living expenses at the time of the hearing of $665 a month. However, beginning in 1945, her federal income taxes were paid by her property managers instead of by herself. Her income at this time amounted to about $795 a month. She earned $16 a month as a Christian Science practitioner and received, roughly, $98 a month in dividends and interest as shown by her 1944 federal income tax return. On the basis of the income shown on that return from her family holdings during the period following her mother's death in May, 1944, her income from that source alone amounted to approximately $680 a month. Thus, according to respondent's own evidence, her monthly income exceeded her maximum monthly expenses by almost $130. In view of the existence of this margin of income over outgo, respondent plainly had no need of temporary support. It is by no means clear that respondent made a disclosure of her entire income. Prior to her mother's death in May, 1944, respondent's family holdings were held in trust. Under the terms of the trust, respondent owned one-eighth of the corpus and received one-half of the net income accruing from such interest, the other half being added to that interest. According to her 1944 federal income tax return, she received in trust income in the neighborhood of $300 a month, but she understood that she could have drawn an additional $200 a month and, in fact, did draw $5,000 of this additional income for the purchase of war bonds. Upon her mother's death in May, 1944, the trust terminated and respondent's

interest in the corpus increased from one-eighth to one-fourth. She also became entitled to all of the income from her interest instead of one-half thereof and thus the income available to her from her family holdings more than quadrupled. However, her withdrawals did not increase proportionately, but only from $300 to $680 per month, shown by her return as income for the two periods. Although this return should have reflected the entire amount of income which accrued to her interest in her family holdings, it appears from the facts just stated that it evidently was not made on that basis. The discrepancy between the amount reported, as increased income following her mother's death, and the greater amount respondent was entitled to receive, namely, over four times her former income, either as testified to by her or as shown on her return, would indicate that the return showed only the amount of her withdrawals of such income during 1944.

However, our decision as to respondent's right to receive temporary support and suit money is not based upon any uncertainty in her testimony but upon the amount of income admitted by her, and her large capital resources. Her holdings, which were valuable, and included more than $17,000 in liquid assets, independently of any question of adequacy of her admitted income to provide conveniently for her temporary support and suit money, required, as a matter of law, denial of awards for support or suit money.

Although respondent also did not disclose the amount or complete composition of her separate estate, she admitted that her interest in her family holdings was worth about $200,000. She failed to reveal the value of other property, consisting of her interest in her mother's estate, the appraised value of which is in excess of $115,000. Respondent did divulge that she possessed over $15,000 in liquid assets, consisting of war bonds of a maturity value of $20,000 and a savings bank account of $2,200, which had been reduced from a 1941 figure of $9,000, largely by war bond purchases.

As previously stated, the grant or denial of pendente lite allowances of temporary alimony and suit money rests in the sound discretion of the trial court. However, that discretion should not be exercised arbitrarily. (*Sweeley* v. *Sweeley*, 28 Cal.2d 389, 394 [170 P.2d 469]; *Turner* v. *Turner*, 80 Cal. 141, 144 [22 P. 72]; *Smith* v. *Smith*, 147 Cal. 143, 145 [81 P. 411].) The wife seeking these awards must establish her necessity for them. Such necessity may be proved

only by showing that her need for proper support and the expenses of the litigation exceed her available resources. This means that the trial judge must be informed in detail not only as to her needs (*Tremper* v. *Tremper*, 39 Cal.App. 62, 66 [177 P. 868]), but also as to her resources. (Cf. *Kenney* v. *Kenney*, 220 Cal. 134, 138 [30 P.2d 398]; *Busch* v. *Busch, supra,* 99 Cal.App. 198, 201.) Here the trial court was uninformed of respondent's total available resources. Manifestly, the court could not exercise a judicial discretion without knowledge of the essential facts.

The argument that these awards are required in order to avoid impairment of the capital of respondent's separate estate is unsupported by the evidence. A review of the California decisions enunciating the rule of no impairment will illustrate the inapplicability of the rule to the factual situation of the instant case. In *Kowalsky* v. *Kowalsky,* 145 Cal. 394, 396 [78 P. 877], the wife's entire separate estate consisted of only $700 in corporate stocks, and she was without other means of support. In *Farrar* v. *Farrar, supra,* 45 Cal.App. 584, 586, the wife's separate income was $2.50 a month. In *Whiting* v. *Whiting,* 62 Cal.App. 157, 160 [216 P. 92], the wife owned $4,300 in nonincome-producing property and her entire other income consisted of her weekly salary of $16.50. In *Busch* v. *Busch, supra,* 99 Cal.App. 198, 200, the wife's income from her property was shown to be about $8.00 a year. In *Westphal* v. *Westphal, supra,* 122 Cal.App. 379, 386, the wife's annual income from her separate property of oil stock, worth about $15,000, did not exceed $500. The contrast between these factual situations and the one we have here is extreme. Respondent, who has no dependents, possesses a separate estate of a value considerably in excess of $200,000 and a separate income substantially in excess of $9,000 a year. Her maximum annual living expenses amount to less than $8,000 a year. In addition she possessed at the time of the hearing over $15,000 in liquid resources, which were accumulated income. Plainly, she was in no need of temporary support, and the expenses of litigation were well within her available resources. (Cf., *Wilder* v. *Wilder,* 214 Cal. 783, 785 [7 P.2d 1032]; *Baldwin* v. *Baldwin,* 28 Cal.2d 406, 418 [170 P.2d 670].) She was in a position to hire and compensate competent legal counsel and otherwise to finance this litigation. In this connection it is interesting to note that she never asked for temporary support and that her original petition, although praying for suit

money, contained no allegation of her financial necessity therefor. To borrow somewhat the thought of the court in *Henderson* v. *Henderson*, 104 Colo. 325 [90 P.2d 968, 971], the trial court apparently proceeded on the theory that since appellant was wealthier than respondent, he should support her during her suit and finance it. That is not the law.

As previously stated, the power granted the court by section 137 is in line with the prevailing authority existing in other jurisdictions, in that it is intended to be exercised only in cases of necessity. After diligent search we have found no case in the United States in which an order for temporary support or suit money has been made in favor of a wife whose financial resources even remotely approached those of the respondent. The order in question presents no appeal to our sense of equity and justice, which tempts us to place a construction upon section 137 which would minimize its strict limitations and be out of harmony with principles which are well settled throughout the states. However, the views we express upon the matters before us should not be understood as indicating what would be a proper judgment in the instant case upon the ultimate issues of permanent support and division of the community property.

 Appellant's third and final contention is that section 142 of the Civil Code compels the reversal of these awards. The last sentence of section 142, as added in 1943, reads as follows: "Where there are no children, and either party has a separate estate sufficient for his or her proper support, no allowance shall be made from the separate estate of the other party." Appellant contends that this mandatory provision applies, since the children of the parties are adults, respondent has a separate estate sufficient for her support, and there is no community property by reason of the insolvency of the community of appellant and respondent both on March 1, 1937, the date of the final decree of their divorce, and as of the time of the hearing. Respondent disputes the factual basis of this argument and also appellant's legal conclusions therefrom. Respondent also contends that appellant, at the hearing, waived the protection of section 142 and may not now claim it. From a study of the record we conclude that the waiver was intended to relate only to the matter of permanent support and it therefore does not enter into our decision.

Apparently, section 142 does apply to awards of temporary alimony in situations meeting the conditions of the provision, but it would not seem to apply in any event to an award of

suit money. (*Baldwin* v. *Baldwin, supra,* 28 Cal.2d 406, 413, 416.) We find it unnecessary to pass upon the merit of this final contention of appellant as to the applicability of the section to the facts taken as established by appellant or to those urged by respondent. Our previously-stated conclusion that the order constituted an abuse of the discretion entrusted to the trial court requires a reversal.

The order awarding respondent pendente lite allowances of temporary alimony and suit money is reversed.

VALLÉE, J. pro tem.—I concur. I agree with all that is said by Mr. Justice Shinn. The complaint in this action alleged extreme cruelty and, by implication, the existence of community property; and prayed (1) for a divorce, and (2) "that the court reserve jurisdiction to determine the rights of the parties as to community property and her rights to support and maintenance and make such order, judgment and decree with reference thereto as may be meet and proper in the premises and for all other, further and proper relief." The answer denied the allegations of cruelty and prayed that the plaintiff take nothing. Pursuant to the prayer of the complaint and a stipulation of the parties, the court, in the interlocutory and final decrees, reserved jurisdiction to determine the issues regarding community property of the parties and the division thereof and relating to support and maintenance between them. The decrees provided that a hearing as to such matters could be brought on by motion of either party at any time upon previous notice to the other party. The issues as to which jurisdiction was reserved have never been tried or determined. The action is still pending as to such issues. Ten years after the entry of the interlocutory decree plaintiff filed her "petition for award of alimony, division of community property, allowance of expenses of litigation, attorneys' fees and other relief." I construe this petition as a notice of motion pursuant to the decrees. Upon the filing of this petition the court issued an order directing defendant to show cause why he should not be required to pay plaintiff ". . . reasonable sums for attorneys' fees and court costs, during the pendency of this action . . ." It is from the order made upon the hearing of this order to show cause that this appeal was taken. It is clear to me that the order was one pendente lite for alimony, suit money and attorneys' fees. It was made pending the continuance of the action. It was to remain in force only until the determination of the issues as to which jurisdiction was re-

served. In his memorandum decision, the judge who heard the order to show cause said: "This is an application by the plaintiff for an allowance from the defendant of moneys on account of attorneys' fees, costs, and for her support *pending the action.*" (Italics added.) The statement is partly in error. Alimony pendente lite was not asked for by plaintiff. Her counsel at the hearing repeatedly stated that she was only asking for suit money and attorneys' fees. In his memorandum of points and authorities, submitted to the trial judge after the conclusion of the hearing, all counsel for plaintiff asked was that "the defendant should be ordered to pay to the plaintiff at this time the sum of $10,000 on account of fees of her attorneys, the sum of $3,500 on account of expenses of accountants and investigators, and $300 on account of costs of depositions and other expenses in these proceedings." The judge hearing the matter, after submission, on his own motion, awarded the plaintiff "$500.00 per month toward her support *pending hearing on the matter of her support.*" (Italics added.) The award being pendente lite, section 137 of the Civil Code applies and the court may only award alimony, suit money and attorneys' fees upon a showing of necessity. The order contemplated by section 139 of the Civil Code is one for permanent support,—one made after a full and complete trial so that the court is in a position to make the award "having regard to the circumstances of the parties *respectively.*" (Italics added.)

There is nothing in either *Scheibe* v. *Scheibe,* 57 Cal.App. 2d 336 [134 P.2d 835], *Lamborn* v. *Lamborn,* 190 Cal. 794 [214 P. 862], or *McClure* v. *McClure,* 4 Cal.2d 356 [49 P.2d 584, 100 A.L.R. 1257], which lends support to the award made here. The Scheibe case was an appeal from an interlocutory decree granting a divorce, dividing property and awarding alimony to the innocent wife. Obviously the court had power, in the absence of a showing of necessity, to make the award of alimony under Civil Code, section 139. The Lamborn case involved only a question of jurisdiction. The former wife had been awarded alimony by a final decree of divorce. The former husband sought modification, which was granted. The former wife appealed from the order of modification and moved the court for attorneys' fees and costs on the appeal thus taken. The former husband appealed from the order awarding attorneys' fees and costs on the former wife's appeal. The only contention made by the husband on this appeal was that the trial court had no jurisdiction to make an award of attorneys'

fees and costs on the appeal of the former wife. The Supreme Court held that the trial court had jurisdiction either under Civil Code, section 139 or under the last sentence of section 137 which authorizes the enforcement of a final judgment providing for support. The McClure case merely held that where a final decree of divorce awards a wife support, a later order releasing the husband permanently from liability for alimony may not thereafter be modified by an award of future support.

I do not think that counsel for defendant led the trial judge to believe that defendant conceded that the matter of deciding on the merits whether an award for support should be made was pending before the court. At the outset the judge expressed doubt about the validity of the reservation of jurisdiction in the decrees and about his power to proceed at all. Counsel for appellant questioned the sufficiency of the original "petition" because there was no allegation of necessity. Respondent amended her petition to allege necessity. As I read the record, it was in connection with these matters and the jurisdiction of the court on the final hearing of the reserved issues that the statements referred to in the dissenting opinion were made. Defendant had a demurrer to the "petition" pending at the time. He was pressing his demurrer, and it was ruled upon with the ruling on the order to show cause. Even if it were material here as to what the judge thought was involved, and I do not think it is, there is no room for speculation, in my opinion, on that score. The judge stated what he understood the issue to be when, long after the statements were made and at the conclusion of the hearing, he said: ". . . the only matter before the Court now is counsel fees and costs on this preliminary motion, and the main issues that you have presented here have not yet been set for hearing." After submission, the judge apparently conceived the idea of making an allowance of alimony pendente lite and he did so. In any event, the matter is not relevant as we all agree that the judge had power to make an award pendente lite. We disagree on the question of whether necessity must be shown.

I do not find anything in the stipulation or in the provisions of the decrees, with respect to the reservation of jurisdiction, which can be construed as an implied agreement on the part of the defendant for action (the making of the allowances without a showing of necessity) which is not authorized by statute. The defendant cannot be precluded from asserting the limitations on the court's jurisdiction except on the basis of estoppel

or waiver found in the stipulation. There is no basis for an estoppel in the stipulation. All that the stipulation as carried into the decrees means, is that the court may exercise its jurisdiction in the future, subject to whatever limitations the law prescribes and not in any other way. The stipulation was not one as to the manner in which the court's jurisdiction should be exercised. There was no waiver. The defendant at all times contended that proof of necessity was a prerequisite to any order. He went so far as to force an amendment of the "petition" to allege necessity.

In my opinion, the award of alimony pendente lite, suit money and attorneys' fees to a wealthy woman upon a perfunctory hearing is clearly beyond the statutory or equity powers of the court. An award not based upon a showing of necessity, without a full and complete trial so that the court may make an award "having regard to the circumstances of the parties respectively," is not only an abuse of discretion but a gross miscarriage of justice.

WOOD, J.—I dissent. Plaintiff and defendant stipulated in writing on June 30, 1936, that the court might retain jurisdiction to determine all matters regarding community property and the division thereof, and "*all matters* relating to support and maintenance as between them, and that the hearing of any such matters may be brought on by motion of either party at any time upon previous written notice to the other party, as provided by law"; and that such stipulation might be incorporated in the final decree of divorce. (Italics added.) The final decree, entered February 26, 1937, included that stipulation. On June 30, 1945, plaintiff filed a "Petition for Award of Alimony, Division of Community property, Allowance of Expenses of Litigation, Attorneys' fees, and Other Relief." On that same day the court made an order to show cause why the defendant should not be required to pay plaintiff "reasonable sums for attorneys' fees and court costs, during the pendency of this action." The proceeding before the trial court, which is the subject of review on this appeal, was upon that order to show cause.

I agree with the majority opinion wherein it is indicated that a trial court possesses power, under statutory provision, to make an award for temporary support without an application therefor. In my opinion, the trial court herein had power, by virtue of said stipulation and the reservation of jurisdiction in the final decree, to make an award for support

of plaintiff, whether the award be regarded as temporary support or as compensation for the wrong done to plaintiff. Further, in my opinion, the statements made before the court at the time of the hearing on July 12, 1945, by Mr. Lewinson, the attorney for defendant, were such that the trial judge was led to believe that defendant conceded that the matter of deciding on the merits whether an award for support should be made was properly before the court. The attorney for defendant stated at the time of said hearing (near the beginning—within the first 65 pages of the 404-page transcript): "My client, who is a lawyer, has instructed me to concede that the reservation in the final decree, having been by stipulation, gives the Court jurisdiction to award alimony *in this proceeding,* and gives the Court the same jurisdiction that it would have in an independent proceeding for an accounting of the former community property; also that, if he is enabled to confer jurisdiction by waiving the provisions of Section 472 [142], Code of Civil Procedure [Civ. Code], to which I shall refer presently, he desires to do so *as to alimony,* but not as to counsel fees or suit money; also to say that, if jurisdiction to award alimony does not exist, he will continue to pay reasonable support money as he has in the past, on being advised of plaintiff's separate income and estate." (Italics added.) He also said ". . . on the basis of Section 142 [Civ. Code] alone, the Court is not empowered to allow alimony or support out of the separate estate of the defendant, but as I have said, if the defendant is able to confer jurisdiction by consent *to make an award of alimony, he is willing to do so, and does do so,* but he does not make such, or give such consent as to the award of counsel fees or expense money or suit money or accounting fees, cost of taking depositions and things usually classified under 'suit money.'" (Italics added.) He also said: "I think I made it clear that while we have conceded, if we are in position to confer jurisdiction that way, the right of the court to allow alimony and support out of the defendant's separate estate, but not attorney's fees, or suit money or expense money. That is with reference to the contention under Section 142 of the Civil Code." He also said: "That *this proceeding* is utterly unnecessary, because at all stages of the dealings between the parties prior to the bringing of *this proceeding,* the defendant conceded, in writing, his liability to pay some sum to the plaintiff. . . ." (Italics added.) In my opinion, those statements were calculated to indicate to the trial judge that the defendant, in view of his stipula-

tion as to the reservation of jurisdiction, did not intend to rely on any technical construction of the stipulation or statutory provisions, but on the contrary wanted a broad and liberal construction given thereto to the end that plaintiff should not be prejudiced by reason of the fact that she had entered into the stipulation and as a result thereof had closed the divorce part of the action before the community property and support questions were settled. As indicative of such intention, the attorney for defendant said: ''I do not want to handle this in a technical manner.'' He also said: ''I am making *the broadest concession,* a far greater concession than I think is justified by the law, but I am under the instructions of my client who is a lawyer, that *the matter of alimony is kept open indefinitely, just as though alimony had been awarded in the decree;* but as to community property it is not kept open indefinitely. . . .'' (Italics added.)

On this appeal the attorney for defendant (appellant) asserts that his statements before the trial court regarding alimony did not relate to temporary alimony, but related to permanent alimony. It is to be noted that in the first statement above quoted the attorney said that the reservation and the stipulation gave ''jurisdiction to award alimony *in this proceeding.''* (Italics added.) It is also to be noted that in the last statement above quoted the attorney said: *''This proceeding* is utterly unnecessary, because . . . prior to the bringing of *this proceeding,* the defendant conceded, in writing, his liability to pay some sum to the plaintiff.'' (Italics added.) The effect of appellant's argument is that by the use of the words ''this proceeding'' he was not referring to the order to show cause proceeding which was then before the court, but was referring to the whole proceeding which was initiated by the petition that had been filed—the trial of the ultimate issues which, it was contemplated, would be had at a later date. Appellant asserts that the trial court did not construe his attorney's statement as a voluntary submission of the right to temporary support. He refers, in support of that assertion, to instances during the hearing when the trial judge remarked that the only issue was that of counsel fees and costs. Those remarks do not indicate necessarily that the judge believed that the matter of making an award for support pending the trial was not before him. It is to be remembered that the attorney for defendant had made assertions to the effect that the court had jurisdiction to award alimony *in this proceeding,* but did not have jurisdiction to award counsel

fees and costs. In view of those assertions, the trial judge might have concluded that since it was conceded that the court had jurisdiction to award alimony in that proceeding the only issue or contest as to jurisdiction was the matter of counsel fees and costs. Even if those remarks of the judge should be interpreted to mean that at the time he made them (on and prior to p. 63 of the transcript) he did not believe the matter of support was before him, it appears from another remark made by him at a later time in the proceeding (on p. 77 of the transcript) that he then believed that the matter of support was before him. At such later time, he said: "Let me make this suggestion, since you concede that jurisdiction lies with reference to the alimony factor, perhaps you can stipulate: The wife undoubtedly would be entitled to something, that is assuming the necessity existed." Thereupon the attorney for defendant said: "Yes, if the necessity existed, certainly." Irrespective of what interpretation should be placed upon the previous remarks of the judge, that remark of the judge and counsel's reply thereto indicate that they were then proceeding upon the theory that, since jurisdiction as to the alimony factor was conceded, the wife was undoubtedly entitled in that proceeding then before the court to an award for support if necessity existed. Since the matter of necessity is an essential inquiry in considering an award for temporary support and is not an essential inquiry in considering an award for permanent support, it would seem that the judge and the attorney were not then discussing permanent support. The attorney for defendant did not explain at the hearing of the order to show cause that his reference therein to "this proceeding" did not mean the proceeding then before the court, but that, on the contrary, it meant some other proceeding that might be had at a later date. Furthermore, it is established by the written opinion of the trial judge that he considered that, by reason of the stipulation and reservation referred to by the attorney, the question of support was before him. In that opinion, after quoting the written stipulation of the parties and the provision of the final decree regarding the reservation of jurisdiction, the judge said: "The plaintiff now comes into court and asks for a determination of the issues over which the court has retained jurisdiction, viz., *her right to support pending the action,* and an allowance for counsel fees and for costs. This is not an action subsequent to the entry of a final decree of divorce where all of the issues made by the pleadings have been determined, but *is a prose-*

*cution of undetermined issues of the original action,* jurisdiction to determine which, as made by the original complaint and answer, has been *specifically retained by the judgment entered as well as by the stipulation* of the parties. The issues thus made and undetermined are the amount of money necessary *to support the plaintiff,* according to the standard established for her by the husband during the existence of the marriage relation as the same may be modified by changed economic conditions, and what her share of the community property may be." (Italics added.) The references herein to statements of defendant's attorney before the trial judge indicate that the order which the trial judge made for the support of plaintiff was not made solely on the court's own motion without suggestion or invitation by defendant's attorney, and they indicate that the trial judge was justified by reason of those statements in assuming that the matter of support was properly before him.

In any event, regardless of whether or not the statements of the attorney for defendant led the court to believe that the defendant conceded that the matter of support was before the court for decision in the proceeding then before the court, the court had power by virtue of said stipulation and the reservation of jurisdiction to make an award for support of plaintiff. In the case of *Scheibe* v. *Scheibe,* 57 Cal.App.2d 336 [134 P.2d 835], there was no allegation or evidence regarding alimony and the trial court made an order for support of the wife. On appeal therein, the court said at page 342: "Appellant's final contention is that in the absence of allegations or evidence relating to the matter of alimony the trial court was without legal authority to order appellant to pay to respondent any sum of money, or to subject his half of the joint tenancy account to a lien for the payment thereof. This contention is not sustainable. The award was made by the trial court in the exercise of the authority conferred by section 139 of the Civil Code . . . As pointed out in some of the earlier decisions . . . [citations] the award made under said section 139, properly speaking, is not alimony, nor is it merely a substitute for the wife's interest in the community or separate property of the husband. It is an allowance authorized to be made by way of compensation for a wrong done to the wife, and in that sense is regarded as a penalty imposed upon the husband." Appellant argues, however, that said section 139, referred to therein, relates only to the allowance of permanent alimony, and that the trial court herein, in awarding temporary sup-

port, was not acting under the provisions of section 139 but was acting under section 137 of the Civil Code which is the authority for allowing temporary support. In my opinion, under the unusual circumstances of the present case, it is not important that it be determined whether the trial court herein acted under section 139 or section 137. The present case is not the usual divorce case where a wife before a divorce case is tried and before it has been decided which party is at fault, seeks support pending the trial, or where at the time of granting the divorce to the wife an order is made for her support. Before the interlocutory decree was made herein, and while the divorce issue was still pending, the court certainly could have awarded temporary support to the wife, under section 137, if the necessity existed. At the time of granting the interlocutory decree herein, when it had been determined that the defendant was at fault, the court certainly could have awarded support to the wife, under section 139, irrespective of whether necessity existed, by way of compensation for the wrong done to the wife. This is an unusual case. Here, only the divorce issue was tried at the time the interlocutory decree was granted, and the parties had stipulated prior thereto that the interlocutory decree might provide (and it did provide) that the court retain jurisdiction to determine all matters relating to community property and support, and that the hearing of any such matters might be brought on by motion of either party at any time. Further in this case, by written stipulation, filed after the interlocutory decree had been granted and after it had been decided that the defendant was at fault, the parties agreed that the court in its final decree might retain such jurisdiction to determine "all matters" relating to community property and support. The final decree provided that such jurisdiction was retained.

In the case of *Lamborn* v. *Lamborn*, 190 Cal. 794 [214 P. 862], the final decree of divorce awarded the wife $45 per month, and after that decree became final the trial court, on the motion of the husband, modified the decree by decreasing the amount of alimony to $35 per month. The wife in that case appealed from the order of modification, and asked the trial court to make an allowance for attorney's fees and costs on the appeal. The trial court therein awarded such fees and costs, and the husband appealed from that order and contended that the trial court had no jurisdiction to award such fees and costs on such an appeal. The court therein stated that section

139 of the Civil Code provided that the award to the wife for her support during her life, made in the final decree of divorce, may be modified from time to time, and the court therein stated that section 137 of the Civil Code provided that during the pendency of the divorce action the court may require the husband to pay as alimony any money necessary for the prosecution of the action and for support. The court therein also said, at page 795: *"It matters not whether we consider the allowance* of costs and attorney's fees to the wife to enable her to appeal from the order modifying the decree *as an additional allowance to her for her support as authorized by section 139 of the Civil Code, made after the final decree of divorce, or whether we consider that the divorce action is pending within the meaning of section 137 of the Civil Code, so long as the court retains power to modify the terms of the decree. . . ."* The court said further therein at page 795: "It is true that an ordinary action is deemed to be pending only until the appeal from the judgment is determined or until the time for an appeal has passed . . . but this general provision of the statute with reference to ordinary judgments is modified in the case of divorce actions by the provisions of the code authorizing the modification of an award for alimony at any time after the final decree is entered." The court said further therein at page 796: "Whether we regard the allowance to the wife as money necessary for her support, the allowance of which is authorized by section 139 of the Civil Code, or as money paid to her as counsel fees and costs during the pendency of the divorce action, it is clear that the court is authorized to make such an allowance to the former wife." In the case of *McClure* v. *McClure,* 4 Cal.2d 356 [49 P.2d 584, 100 A.L.R. 1257], the court cited with approval the Lamborn case, *supra,* and stated at page 362: "Where the divorced husband has not been released permanently from the obligation to pay alimony, the court may allow the wife costs and attorney's fees to prosecute or defend an appeal from an order of modification, *either on the theory* that such an award is an additional allowance for *support* made under section 139 of the Civil Code, *or on the theory that where the power to modify continues, the action is still pending* under section 137 of the Civil Code, which authorizes the court to require the husband to pay money to enable the wife to prosecute or defend the action." (Italics added.)

By the stipulation of the parties in the present case it was intended that the plaintiff should not suffer any prejudice

in any respect regarding any matter of support, either under section 137 or section 139 or at all, if she obtained a decree of divorce before the matter of support was settled. By that stipulation it was clearly intended that the action should be regarded as still pending, even after the divorce issue was determined, as to any matter relating to community property or support, and that plaintiff should not encounter any technical objections on the part of defendant, particularly as to legal procedure under section 137 or section 139 of the Civil Code, in attempting to proceed pursuant to the stipulation. In my opinion, in view of the stipulation of the parties, the reservation of jurisdiction in the decree, the statements of defendant's attorney before the trial judge, the provisions of sections 137 and 139 of the Civil Code, the decision in *Scheibe* v. *Scheibe, supra,* 57 Cal.App.2d 336, 342, and the decision in *Lamborn* v. *Lamborn, supra,* 190 Cal. 794, 795, the trial court here had power to award support whether the award be regarded as temporary support until the hearing on the merits concerning the issues as to property and permanent support, or whether it be regarded as a modification of the final decree to the extent of awarding compensation to the wife for the wrong done until the hearing on the merits.

In his written opinion the trial judge said properly and accurately: ''The right to share in the community property as well as to be supported out of it is of as great importance to the wife in most cases as is her right to have the marriage dissolved. They form an important part of the action, and in this case these issues are still pending. The denial [by the defendant] of the existence of a community estate does not detract from the importance of the issue, and where, as here, there appears to be some community estate, and also a commingling of community property by the husband with his separate estate an allowance should be made,'' and that ''While a wife is entitled to support out of the community property where she is not at fault, she is not limited in such support to the community property. The award may be made by way of compensation for a wrong done (*Scheibe* v. *Scheibe,* 57 Cal.App.2d 336 [134 P.2d 835]). Since the decree of divorce has been entered here, any award for support, even though temporary, must partake of the latter character.'' It therefore appears that the trial judge considered that, since it had been decided that defendant was at fault, the award for support herein partook of the character of compensation

for a wrong done. If an award for support is made on the basis that it is compensation or damages or a penalty for a wrong done, then the question as to whether there was necessity for support is not material. The attorney for defendant evidently was of the opinion at the hearing that an order for support could be made only on the basis of necessity. He argued at length to that effect. Also, in a letter to plaintiff, during negotiations concerning payments for her support, he asserted "that not only Mr. Loeb's ability to pay, but your *needs are involved.*" (Italics added.) An important point in this case is that the trial court had power to make an award for support on the basis that it was compensation or damages or a penalty for the wrong done.

It appears, however, that the trial judge also determined there was necessity for an award for support. In my opinion the evidence supported that finding. The question before the trial court, under a consideration of the matter of necessity for support, was not whether it was possible for a person to live or exist on the separate income of the plaintiff. It was a question as to plaintiff's accustomed mode of living. From the time the interlocutory decree of divorce was granted in June, 1935, until December, 1938, the defendant voluntarily paid to plaintiff for her support $850 a month. During that period of time plaintiff received $200 per month from a trust fund created by her father, and during a part of that time (until December, 1937) she received $125 per month as rental for certain real property. In other words, at the time the interlocutory decree was granted, and thereafter for approximately two years, her income was $1,175 per month. Defendant knew at the time he voluntarily paid her $850 per month that, in addition thereto, plaintiff was receiving $325 per month. It is reasonable to conclude that during that period of time the defendant considered that the amount necessary for plaintiff's support, according to her accustomed mode of living, was $1,175 per month. During that period the cost of living was considerably less than it was at the time of the hearing on the order to show cause herein. After said period of time defendant voluntarily paid to plaintiff for her support, as follows: from December, 1938, to March, 1942, $650 per month; from March, 1942, to August, 1944, $500 per month; from August, 1944, to December, 1944, $350 per month. Although he reduced his payments, as above shown, he told plaintiff at the time the reductions were made that the reductions were temporary only. When plaintiff's mother died in May, 1944,

the trust which had been created by plaintiff's father terminated, and plaintiff's income increased from $200 to $675 per month. Her income from other sources at the time of such increase was about $100 per month. In other words, after the death of plaintiff's mother, plaintiff's income, including the $350 paid by defendant, was about $1,125 per month. Defendant had been one of the trustees of that trust, and presumably he knew approximately the amount of her income therefrom after the termination of the trust. It is reasonable to conclude that during the latter part of 1944, when defendant was voluntarily paying $350 per month for the support of plaintiff, he considered that the amount necessary for plaintiff's support, according to her accustomed mode of living, was at least in excess of $1,100 per month. It seems that the defendant recognized that, according to the mode of living which he established for her during their marriage, an amount in excess of $1,100 per month was a reasonable amount for her support. It is to be noted that the award of $500 per month, made by the trial court herein, and her income of $775 per month from her separate property, made a total sum per month that is approximately the amount which defendant has regarded, over a period of several years, as a proper amount for plaintiff's support according to her accustomed mode of living.

In December, 1944 (a few months after the trust ended), defendant quit making payments to her. Her interest in the trust property after the termination of the trust was of the approximate value of $200,000. In addition thereto, she has war bonds of the maturity value of $20,000, a savings account of $2,200, and a checking account of $150. (She also has an interest in her mother's estate, but the amount of her interest is not shown—the appraised value of the estate is $116,442.81.) During the first half of 1945 (preceding the hearing herein in July, 1945) her expenses per month, including income taxes, were approximately $625, which amount was considerably less (about $500 less) than the amount which defendant had recognized as a reasonable amount to maintain her according to her accustomed mode of living. Her separate income during that time was approximately $775 per month. Although she did in fact restrict her expenses, during that time after defendant had quit making payments toward her support, to an amount which was about $150 less than her separate income, it does not necessarily follow that it should be concluded that,

since she had demonstrated under the changed circumstances that it was possible for her to live on an amount less than her own separate monthly income, the amount on which she did live was the extent of her needs, and that her accustomed mode of living should not be considered. In my opinion the trial judge, in determining the matter of plaintiff's necessity for support, under the unusual circumstances of this case—particularly in view of the stipulation (at the time of the divorce) to suspend the ordinary rules as to the time when such determination should be made, was required to consider her mode of living as of the time defendant stipulated that the court should reserve jurisdiction regarding ''all matters relating to support.'' If the stipulation had not been made that matter would have been determined when the decree was rendered, and, of course, her standard of living at that time, as it had been established by the defendant during the marriage, would have been considered. Even if the matter of her standard of living should not be considered as of that time, but should be considered as of the date of the hearing herein, it appears, as above shown, that as late as December, 1944 (a few months before the hearing herein), when defendant quit aiding in her support, he recognized at that time that her standard of living was the same then as it had been when the decree was rendered.

In any event, irrespective of the amount necessary to support her according to the standard of living which he established for her, the amount actually expended by her under her reduced standard of living, after he quit aiding in her support, impairs and practically consumes her own separate income which she acquired by inheritance from her father, while defendant has retained the community property and commingled it with his separate estate. It is proper, in view of the stipulation, to consider the relative financial conditions of the parties in deciding whether she should be required to impair her separate income and the corpus of her separate estate in order to maintain her accustomed mode of living. During the thirteen years preceding the hearing herein defendant's income averaged about $61,000 per year. In his brief, defendant states that since the entry of the final decree (to the end of 1944, when he quit paying) he has paid her $59,450. It is to be noted also that during that time his income was in excess of $400,000, and that he had the possession and use of the community property. Although defendant asserted at the hearing that there is no community property,

and that the community obligations in 1937 exceeded the value of the community property, it appears that he has admitted that since the final decree was made he sold community property for $82,764.90. The trust created by plaintiff's father for her benefit was known by the parties to be in existence at the time the stipulation was made. It was not intended by the stipulation that upon the termination of the trust the proceeds thereof should become a substitute for defendant's obligation to furnish necessary support to plaintiff. The stipulation certainly was not entered into for the purpose of suspending the decision of the court regarding support until the trust ended, so that it might then appear that no necessity existed for support by defendant. The stipulation did not become purposeless and ineffectual when the trust ended, and plaintiff should not be required, under the unusual circumstances here, to impair her separate estate.

As to counsel fees and costs, in my opinion, the evidence supported the order of the trial court. The statements made hereinabove concerning necessity for support are applicable also to the matter of necessity for counsel fees and costs. At the time the stipulation was made there was some community property, and defendant had control of it. The defendant is entitled to use community property in the litigation so far as his necessities require, and the plaintiff is entitled to an equal privilege with him in the use of such part of the community property as may be necessary to maintain her rights. It appears that plaintiff, in proceeding under the stipulation to have the matter of her rights to community property and support determined, is confronted with long and tedious litigation, involving an accounting covering several years. The parties were married in 1911, and the final decree of divorce was entered February 26, 1937. Defendant married again in June, 1937, and at the time of the hearing herein he and the second wife were separated, and there are various questions herein concerning the former community property as it may or may not be commingled with the second community property and with defendant's separate estate. The hearing on this order to show cause alone extended over a period of several days, resulting in a reporter's transcript of 404 pages. The defendant has pleaded the statute of limitations, laches, and estoppel; that plaintiff had waived her interest in the community property (before the stipulation was entered into); and that there is no community property. Defendant has been practicing law in Los Angeles since 1909, maintains a large

law office, and as above indicated has an extensive and lucrative practice. It is apparent that the amount of counsel fees, costs and expenses, required of plaintiff, under the issues presented by defendant, will be large. This litigation is the result of defendant's refusal to continue making payments for the support of plaintiff. If she should be required to pay counsel fees, costs and expenses, including the services of accountants for several weeks, it is apparent that all of her separate income will be consumed and her separate estate will be greatly impaired. Under the unusual circumstances of this case—especially in view of the stipulation, the fact that he has the community property, and that she acquired her separate property by inheritance from her father—she should not be required to so impair her separate property in order to make the stipulation of the parties effective. The attorney for defendant stated during the hearing, in referring to counsel fees and suit money, that since plaintiff had brought the litigation when it was unnecessary "she must pay the freight." If she had not entered into the stipulation before the divorce decree was made, and had insisted, on the contrary, that the matters of support and community property be settled by litigation at the time, before the trust had ended, undoubtedly defendant would have been required to pay the counsel fees and suit money.

The important fact in the present case which distinguishes it from those cases cited in the majority opinion regarding impairment of separate property is the stipulation herein.

As above stated, irrespective of necessity, the order of the trial judge awarding support was correct, upon the basis that it was compensation or damages or a penalty for the wrong done. The matter of determining, in addition thereto, the fact as to whether there was necessity for support was within the sound discretion of the trial judge. Likewise, the matter of determining the fact whether there was necessity for counsel fees and costs, was within the sound discretion of the trial judge. Important questions of fact for the trial judge were: as to plaintiff's accustomed mode of living; whether there was community property; whether it was intended by the parties in entering into the stipulation that if and when the trust ended the defendant would be relieved of his obligation for support; the construction which the parties themselves placed upon the stipulation, with respect to support, as indicated by their actions and conduct under it for several years; the extent of the litigation; the relative incomes and expenses, and

financial condition, of the parties; whether the amount required for support, counsel fees and costs, would impair plaintiff's separate property. An important question of fact, especially in regard to counsel fees and costs, was whether there was community property, and the trial court apparently disbelieved defendant's assertion that there was no community property. It seems unreasonable that defendant would have made the stipulation regarding a division of community property if there had been no community property or if plaintiff had waived her rights thereto. In my opinion there was no abuse of discretion by the trial judge, but on the contrary his findings of fact, under the unusual conditions here, were adequately supported by the evidence.

In my opinion, the order should be affirmed.

A petition for a rehearing was denied March 23, 1948. Wood, J., voted for a rehearing.

Respondent's petition for a hearing by the Supreme Court was denied April 29, 1948.