[Civ. No. 17825. Second Dist., Div. Three. Apr. 20, 1951.]

VERONE O. BERNHEIMER, Appellant, v. EARLE J. BERNHEIMER, Respondent.

Pacht, Warne, Ross & Bernhard and Bernard Reich for Appellant.

Gold & Needleman, J. George Gold and James J. Needleman for Respondent.

BARTLETT, J. pro tem.—This is an appeal from orders which denied appellant's application for support, counsel fees and costs pendente lite and granted appellant's motion for the support of the minor child and fixed the sum for that support at $300 per month.

Among other reasons advanced by appellant as to why these orders should be reversed, appellant contends that the court erred in holding that a decree rendered August 21, 1943, by the court of Jackson County, Missouri, divorcing respondent from a former wife, Sally Bernheimer, was invalid. We do not deem it necessary to determine that question for the reason that we are of the opinion that on account of the facts to which we will hereafter refer and the law applicable to those facts, the respondent was estopped from making a collateral attack on his own divorce in Missouri and in claiming the invalidity of his marriage to appellant.

The transcript of oral testimony taken at the hearing and the affidavits of the parties showed that for some time prior to December, 1941, respondent had been married to Sally Bernheimer; that on December 19, 1941, he filed an action for divorce against Sally Bernheimer in Juarez, Mexico; that on December 30, 1941, Sally Bernheimer filed suit against respondent in Los Angeles, California, to enjoin him from obtaining this Mexican divorce, which relief was granted. Notwithstanding this injunction respondent proceeded with his action in Mexico and was granted a decree of divorce on January 30, 1942. The respondent testified that at the time he went to Juarez, Mexico, he was accompanied by the attorney who now represents him and who has represented him in all the proceedings in this case and that he went to Juarez on this attorney's advice. Respondent, accompanied by this same lawyer and appellant, thereafter went to Las Vegas, Nevada, and married appellant on the 4th of February, 1942, On February 9, 1942, the son of appellant and respondent was born.

On July 28, 1943, respondent entered into a property settlement agreement with Sally Bernheimer and thereafter gave her $1,500 to pay her travelling expenses to go to Kansas City, Missouri, and file suit for divorce which she did on August 5, 1943. Respondent testified that he, accompanied by his present attorney, also went to Kansas City and entered an appearance in the action upon the advice of this attorney. A decree of divorce was granted to Sally Bernheimer on August 13, 1943. On September 4, 1943, appellant and respondent were again married in a church in Reno, Nevada. Respondent's attorney again accompanied them on this trip. The appellant had knowledge of all of the foregoing facts. Respondent further testified that until a few months before

the hearing in this case appellant never had an attorney other than his lawyer ". . . but he certainly gave her very good advice."

According to the affidavit of respondent, on April 11, 1944, he filed suit in Missouri on behalf of the son of appellant and respondent against the First National Bank of Kansas City for declaratory relief concerning the meaning and intent of a will which had been executed by respondent's mother. He states further in this affidavit that the validity of his Missouri divorce was collaterally attacked in this action and that a decree of the lower court in the action was reversed by the Supreme Court of Missouri but that a rehearing *en banc* had been granted and that the action was still pending at the time of the hearing in this case. So far as the question which we are considering now is concerned. this matter is of importance by reason of respondent's statement in his affidavit that he has taken the position throughout the proceedings before the Missouri courts that the divorce decree rendered in Missouri on August 13, 1943, was valid. It further appears that up to July 28, 1949, the parties were living together as man and wife.

At the hearing in this case, the appellant testified to the marriage which took place at Reno, Nevada, on September 4, 1943. The respondent, in his answer, stated that such a ceremony took place. That was sufficient proof of marriage to entitle appellant to receive attorney's fees, suit money and costs pending the trial and the burden of proof was then upon respondent to show the invalidity of this marriage. (*Bancroft* v. *Bancroft*, 9 Cal.App.2d 464 [50 P.2d 465]; *Thomas* v. *Thomas*, 66 Cal.App.2d 818 [153 P.2d 389].) This burden he attempted to meet by attempting to attack collaterally his own divorce from Sally Bernheimer in Missouri in which proceeding he had participated and entered an appearance. The principle which we are applying here was stated clearly in *Rediker* v. *Rediker*, 35 Cal.2d 796, at page 805 [221 P.2d 1], in this language: "Even if the Cuban decree were invalid, defendant cannot contest its validity. The validity of a divorce decree cannot be contested by a party who has procured the decree or a party who has remarried in reliance thereon, or by one who has aided another to procure the decree so that the latter will be free to remarry." Respondent seeks to avoid the application of the law as stated in the preceding quotation in the following statement which

we quote from his brief: "Factually the *Rediker* case is a classical example of the situations where (1) the husband attempts to blow hot and cold at the same time, (2) where the husband seeks the aid of the court of equity to enable him to reverse a former position to the injury of another, and (3) where a husband has first invoked the exercise of a jurisdiction within the general powers of a court and then later seeks to reverse the effect of its jurisdiction." Factually the case before us is a perfect example of the situations just stated. Here, the husband aided his former wife, Sally, to procure the very decree he now seeks to declare invalid so that he could marry his present wife. On the strength of that decree he did marry her. When the validity of the decree was attacked collaterally in Missouri he tells us in his affidavit that he took the position throughout the proceedings there that the Missouri decree was valid and he further tells us that those proceedings are still pending so we have a situation where at the same time he contended in California that the Missouri decree was invalid he was maintaining its validity before the courts of the State of Missouri.

Respondent makes the further contention that no court can concede the invalidity of a prior divorce decree and then apply this doctrine of estoppel. The answer to that is that in the event the court made a finding that the Missouri decree was valid there would be no occasion to apply this doctrine of estoppel and that contention is exactly contrary to the language which we have quoted in *Rediker* v. *Rediker, supra,* 35 Cal.2d 796, 805. What we are saying here is that a man in the position of respondent, as shown by the facts of this case, cannot raise any question as to the validity of such a decree and it does not matter whether or not the decree in question was invalid. That is the direct holding in *Bruguiere* v. *Bruguiere,* 172 Cal. 199 [155 P. 988, Ann.Cas. 1917E 122] ; *Harlan* v. *Harlan,* 70 Cal.App.2d 657 [161 P.2d 490] ; *Krause* v. *Krause,* 282 N.Y. 355 [26 N.E.2d 290]. ▮ Such being the case the only evidence properly before the court was the admittedly true evidence of the ceremony performed in Reno, Nevada, September 4, 1943, which gave the court jurisdiction to grant the relief asked by the appellant. It is true that the appellant knew that her husband had been divorced in Missouri from his first wife. In fact, relying upon that decree, she married him and no logical reason is suggested as to how the mere fact of such knowledge could bar her

under all the facts in this case, from maintaining that her husband is now estopped from asserting that this decree was invalid.

The next question which concerns us is whether or not, in the light of the record before us, the court exercised the proper judicial discretion in denying the wife an order for her support pendente lite, in denying her any attorney's fees or court costs to maintain her own action, or to defend against the cross-complaint for annulment filed against her and denying her any attorney's fees to pursue her application for money to support the child of the parties pending the action. In *Loeb* v. *Loeb*, 84 Cal.App.2d 141 [190 P.2d 246], the rule governing courts in such matters is set forth as follows on pages 144 and 145: "The manifest purposes of pendente lite allowances to a wife are to enable her to live in her accustomed manner pending the disposition of the action and to provide her with whatever is needed by her to litigate properly her side of the controversy. (*Mudd* v. *Mudd, supra*, 98 Cal. 320, 322 [33 P.2d 114]; *Busch* v. *Busch*, 99 Cal.App. 198, 202 [278 P. 456]; *Locke Paddon* v. *Locke Paddon*, 194 Cal. 73, 81 [227 P. 715].) If she possesses independent means sufficient for these purposes the allowances should not be granted. (*Mudd* v. *Mudd, supra.*) However, she is not required first to impair the capital of her separate estate. (*Farrar* v. *Farrar*, 45 Cal.App. 584, 586 [188 P. 289].)" That brings us first to the manner in which the parties had lived up to the time of their separation. For seven years they had lived at an establishment in Brentwood, Los Angeles, California, consisting of over four acres, a 15-room house and a swimming pool. The servants consisted of two gardeners, a governess for their child, a maid, a cook and a butler. At the time of the hearing the respondent was still living in this home which was his separate property. At that time the child was 7½ years of age.

There was considerable conflict in the testimony as to respondent's means and income but this testimony should be taken in the light most favorable to him. Therefore we will look to the affidavit which he filed on the order to show cause.

This affidavit states that his income during the preceding year from a trust estate, from which he secured a monthly income, was $23,674 and that he also during that year received from the corpus of the trust the sum of $15,000. That his present income amounts to $1,973 per month. That in addition to this income he has a present net financial worth

of $103,300. He further states in the affidavit that his necessary expenses are $3,500 per month and estimates the necessary expenses for the support of his wife and child at the sum of $420 per month. The sum of $103,300, stated in the affidavit to be his present financial worth, was shown by his testimony to be his estimate of the present net value of his house and did not include the furniture in it, silverware, oil paintings, art objects and the like, his automobile or his jeep or a collection of first editions which he had accumulated during the course of the preceding 32 years. No competent evidence was introduced of the value of this personal property.

In regard to appellant, the undisputed facts are that she had no income whatever, that she was 27 years of age, that during the eight years she had lived with respondent she had earned no money and had the child of the parties to take care of. The only asset she had were furs and jewelry given to her by her husband during the eight years they had lived together. The evidence regarding the value of this property was of the same type as that given in regard to the husband's personal property, that is, that he had carried insurance of $12,000 on the furs and $73,000 on the jewelry. There was not one word of testimony as to the market value of this jewelry or these second-hand furs.

Respondent's contention in regard to this phase of the case is set forth in his brief in this language: "The courts repeatedly say that the matter is always left to the sound discretion of the trial judge. The correct rule is that in some cases, under some circumstances, the judge may, in the exercise of a proper discretion, require the wife to exhaust the corpus of her own separate property before making a *pendente lite* award against her husband, but in other cases, the court may deem it proper to make an award without requiring the wife to impair or exhaust her separate property." It is true that a court has discretion in these matters. In fact section 137 of the Civil Code so provides. However, this discretion is not an arbitrary one and it must be exercised along legal lines taking into consideration the parties' former manner of living, their respective incomes and their financial abilities. (*Smith* v. *Smith,* 147 Cal. 143, 145 [81 P. 411]; *Kyne* v. *Kyne,* 70 Cal.App.2d 80 [160 P.2d 910]; *Loeb* v. *Loeb, supra,* 84 Cal.App.2d 141, 145.) In *Buehler* v. *Buehler,* 73 Cal.App.2d 472 [166 P.2d 608], the court makes this declaration at pages 475 and 476: "The law is settled in California that when a wife is the owner of nonincome producing prop-

erty she is not required to have recourse to such property for her support before seeking support from her husband. (*Farrar* v. *Farrar*, 45 Cal.App. 584, 586 [188 P. 289] ; *Busch* v. *Busch*, 99 Cal.App. 198, 200 [278 P. 456].)'' In addition to the cases cited in this opinion the same declaration is made in equally unequivocal language in *Westphal* v. *Westphal*, 122 Cal.App. 379, 384 [10 P.2d 119] ; *Cameron* v. *Cameron*, 85 Cal.App.2d 22, 29 [192 P.2d 89] ; *Loeb* v. *Loeb, supra*, 84 Cal.App.2d 141, 145; and *Whelan* v. *Whelan*, 87 Cal.App.2d 690 [197 P.2d 361].)

In view of the undisputed facts of the conditions under which the parties lived up to the time of their separation, the income which the husband had during the past year and which he concedes he will have in the future, and in view of the necessities of the wife, in the absence of any income whatever on her part and of the other undisputed circumstances shown by the record, we come to the conclusion that in denying the wife any sum whatever for her support and in denying her any attorney's fees or any costs whatever either to prosecute her own action or this one for her child's support or defend against the cross-complaint for annulment brought against her, these orders cannot be sustained as an exercise of sound judicial discretion.

The court allowed appellant $300 for the support of the child. Considering her affidavit upon which the order to show cause was based and her statement of her needs in this respect we can see no abuse of discretion upon the part of the court in this award.

As it will be necessary for the court to determine the issues of fact in regard to alimony pending the trial, attorney's fees and costs, there is no reason to consider the other matters in which the appellant contends the court erred.

The orders of December 15, 1949, and December 30, 1949, are reversed except those portions of the orders which award the custody of the minor child to appellant and order respondent to pay appellant the sum of $300 per month for the support of the child as to which matters the orders are affirmed.

Shinn, P. J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 18, 1951.