[Civ. No. 14854.    First Dist., Div. One.    Mar. 28, 1952.]

HELEN P. GROMEEKO, Appellant, v. ANDREW S. GROMEEKO et al., Respondents.

Hyman & Hyman for Appellant.

Abraham Glicksberg and W. L. A. Calder for Respondents.

WOOD (Fred B.), J.—Plaintiff Helen Gromeeko has appealed from three orders made in this action for divorce: (1) an order terminating an order which required defendant Andrew S. Gromeeko to pay plaintiff for her support, counsel fees and court costs pending the action; (2) an order which denied plaintiff's motion for an order directing defendant to give and complete his deposition; and (3) an order which denied her motion for counsel fees and costs for the taking of defendant's deposition.

The appeal from the order terminating the temporary support order presents the question whether or not a certain Nevada decree of divorce between these parties deprives the trial court, in this action, of jurisdiction to award support money, counsel fees and costs, unless and until the Nevada decree shall have been annulled by a court of competent jurisdiction; and, if not, the degree of proof required, of the as-

serted invalidity of the Nevada decree, upon the hearing of a motion for support money, counsel fees and costs pending the action, or of a motion to terminate an order for the payment of such moneys.

April 3, 1950, plaintiff filed her complaint herein, asking for a divorce from Andrew, and for an accounting by Andrew and the other defendants as to certain properties. Among the acts of cruelty upon which she grounded her complaint for divorce, she alleged, concerning the Nevada decree: Since August 1, 1947, Andrew and defendant Elena S. Cronier had been living together representing themselves to be husband and wife; in December, 1947, Andrew falsely represented to the plaintiff that Elena was going to bear a child by him, that he loved plaintiff but intended to obtain a decree of divorce in Reno for the sole purpose of temporarily marrying Elena, thereafter to divorce Elena and remarry plaintiff; Andrew, while a resident of San Francisco, obtained a purported decree of divorce in Nevada, which decree was fraudulently obtained and is void.

Plaintiff applied for an order for support money, counsel fees and costs pending the action. At the inception of the hearing of that application, counsel for Andrew objected to any hearing thereof, on the asserted ground that plaintiff was not the wife of Andrew, that they were divorced in February, 1948, and that plaintiff was represented in court in the divorce action. Counsel for plaintiff replied that they had alleged that there was a fraudulent decree of divorce with no residence in Nevada of either party. The objection was overruled. Plaintiff then asked Andrew certain questions in respect to his residence in California. He testified that he had been a licensed real estate broker in California for 15 years, during which period he had never registered to vote except in San Francisco, and did vote in San Francisco and nowhere else. Thereupon Andrew's counsel said "in the interest of time I withdraw my objection and the court may proceed on the order to show cause; I think we can save a great deal of time." To which plaintiff's counsel responded, "I will address no further questions as to the jurisdiction of the Court, in view of that stipulation, your Honor."*

*That was not a stipulation conferring jurisdiction, nor did the withdrawal of the objection at that time prevent the defendant from later interposing it. A party cannot confer jurisdiction of the kind in issue. Such an issue may be raised at any time. (See *Colbert* v. *Colbert,* 28 Cal.2d 276, 279 [169 P.2d 633].)

Plaintiff was then called to the stand. She testified that she and Andrew were married in San Francisco in 1939 and that she resides in San Francisco. She then gave evidence tending to show her financial need and Andrew's ability to pay. April 21, 1950, the court ordered Andrew to pay $150 monthly for support, $300 on account of counsel fees, and $20 on account of costs.

That evidence supported the order made. ▮ Plaintiff proved the marriage. That shifted to Andrew the burden of showing what, if anything, prevented that marriage ceremony from establishing the relationship of husband and wife between these parties, or what, if anything, later occurred to terminate that relationship. (*Bernheimer* v. *Bernheimer*, 103 Cal.App.2d 643 [230 P.2d 17] ; *Thomas* v. *Thomas*, 66 Cal.App.2d 818 [153 P.2d 389] ; *Bancroft* v. *Bancroft*, 9 Cal. App.2d 464 [50 P.2d 465].) Andrew did not meet that burden. Upon that hearing there was presented to the court no evidence whatsoever concerning the Nevada divorce decree or any of its incidents.

Later, Andrew gave notice of motion to vacate the pendente lite order of April 21, 1950, upon the ground that the court lacked jurisdiction to make that order because these parties had not been husband and wife since February 2, 1948, when a Nevada court of competent jurisdiction divorced them by a decree in an action in which the plaintiff personally appeared.

August 30, 1950, upon motion of plaintiff, the hearing of defendant's motion was continued until October 10, 1950. As a condition of the continuation, the court ordered that support payments stop pending the hearing of defendant's motion.

At the inception of that hearing, plaintiff filed an amended complaint in which she sought annulment of the Nevada decree, a divorce from Andrew for extreme cruelty, and an accounting. As grounds for annulment of the decree she alleged : the same asserted misrepresentations as in the original complaint (summarized earlier in this opinion) ; Andrew never acquired a Nevada residence and went there for the sole purpose of getting a divorce; plaintiff was mentally incapacitated during that period; various documents, including a power of attorney to Gordon Rice, were executed by her while incapacitated and under the influence and control of Andrew; and Andrew caused perjured testimony to be given the Nevada court concerning his place of residence.

Defendant introduced in evidence a photostatic copy of a power of attorney bearing plaintiff's signature. By it, she

purportedly appointed one Gordon Rice her attorney at law and in fact to represent her in any suit for divorce that might be brought against her in Nevada by her husband. Plaintiff testified the signature looked like hers but she could not say if it was hers. She was sure she never gave such a power of attorney.

Defendant then put in evidence the judgment roll and the transcript of testimony in the Nevada action. It appeared therefrom that Andrew brought the action; that plaintiff herein personally appeared therein by her attorney, Gordon Rice, filing an answer, and through him participated at the trial; that the Nevada court found, upon supporting evidence, that Andrew was and for more than six weeks prior to filing the complaint had been, a bona fide resident of Nevada and of Washoe County, and was corporally present and domiciled therein during all of that time; and that the decree had become final.

Defendant next put in evidence the file of an action for divorce, in the Superior Court, San Francisco, brought in 1947 by this plaintiff against this defendant. Included in the file was an instruction (dated April 14, 1948) to the clerk to dismiss that action for the reason that a decree of divorce had been theretofore obtained by the parties in Nevada. A certified copy of the Nevada findings and decree was attached thereto. Plaintiff testified she did not remember signing that instruction for dismissal but that it was her signature.

The trial court sustained objections to a number of questions which plaintiff's attorney asked her concerning the power of attorney, questions such as these: Did she know the Gordon Rice mentioned in the document? Had she in any manner contacted or spoken to or written to or received anything from anyone by the name of Gordon Rice? Had she ever appointed anyone as her attorney to appear for her in the Reno divorce action? Her counsel said that by such questions he sought and offered to prove that plaintiff had no attorney named Gordon Rice and never knew what he was doing or what he had done. The court said, "I will stay by the ruling, objection sustained."

The same rulings were made as to these questions: Did she ever know whether she had appointed anyone to be her attorney in Nevada? Was she ever a resident of Nevada? As to papers presented to her by Andrew on or about January 29, 1948, the date of the power of attorney, did Andrew explain

to her the nature of those papers? (She said he did not ask her to read it; was positive she did not read any document he gave her to sign at that time.) Did she know whether Andrew ever lived in Nevada? Did Andrew ever notify her he was living in Nevada?

Upon the sustaining of an objection to the question whether shortly after the Reno divorce Andrew talked to plaintiff about Elena Cronier, plaintiff's counsel said he sought to show that for a period of time, about that time, Andrew told a story to plaintiff about Elena Cronier which terrified plaintiff concerning the fact, represented by Andrew, that his child was to be born of that party and that he represented that as a necessity for obtaining the decree of divorce in Reno; he represented a picture to plaintiff, which she believed, of a complete source of embarrassment, of ''ostracization,'' of complete financial ruin to himself and plaintiff, and that was the cause of her becoming hysterical and of executing certain documents at his demand. Further, her counsel desired to show through this witness that Andrew represented that the Reno divorce was merely for a temporary marriage, so that a name would be given the child which he represented was to be born, and that he would thereafter come back to plaintiff, and live with her and be remarried; that the decree was obtained through collusion and fraud, at a time when his client was so mentally upset she did not know what was happening; that the Nevada decree was void because neither of the parties was a resident of Nevada; also, he sought to show the Nevada decree was void because fraud was practiced upon plaintiff and because of her state of mind. Defendant objected, characterizing it as an attack upon the Nevada decree, not a part of this proceeding even if permissible on the trial of the action. The court sustained the objection.

Those rulings of the trial court were erroneous. The order terminating the order awarding support moneys, counsel fees, and costs should be reversed and the proceeding remanded for rehearing.

■ It is true that if plaintiff did appear and participate in the Nevada action, she could not later collaterally attack the decree rendered therein upon issues (such as Andrew's acquisition of residence in Nevada) litigated and decided therein. (*Heuer* v. *Heuer,* 33 Cal.2d 268 [201 P.2d 385]; *Estate of Schomaker,* 93 Cal.App.2d 616 [209 P.2d 669]; *Daut* v. *Daut,* 98 Cal.App.2d 375 [220 P.2d 63].) In each of those cases, as in *Sherrer* v. *Sherrer,* 334 U.S. 343 [68 S.Ct.

1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355], and *Coe* v. *Coe*, 334 U.S. 378 [68 S.Ct. 1094, 1097, 92 L.Ed. 1451, 1 A.L.R.2d 1376], the party who later unsuccessfully sought collaterally to attack a foreign divorce decree did in fact personally appear in the foreign divorce action. ▆▆ In contrast, in the present action, the plaintiff seeks to show that she did not authorize anyone to appear for her in the Nevada action, that her seeming appearance therein was the result of fraud practiced upon her and the Nevada court by the defendant herein. If she proves·those allegations she will be in a position to tender proof (1) that her signing of the dismissal of her earlier California divorce action was done under circumstances which negative that act as an estoppel against the position she takes in this action, (2) that Andrew did not acquire a Nevada residence, and (3) that the Nevada decree was procured through collusion and fraud. (See *Wolff* v. *Wolff*, 134 N.J.Eq. 8 [34 A.2d 150].)

That being so, upon the trial of this action, may she not tender the same issues upon the hearing of an application for temporary alimony and upon the hearing of defendant's motion to terminate the order for temporary alimony? We conclude that she may.

The applicable statute declares that "When an action for divorce is pending," the court may, in its discretion, "require the husband . . . to pay as alimony any money necessary to enable the wife . . . to support herself . . . , or to prosecute or defend the action." (Civ. Code, § 137.)

▆▆ There must, of course, be proof that they are husband and wife. The required degree of proof is not as high as upon the trial upon the merits. The very provision for suit money indicates that. In *Sharon* v. *Sharon*, 75 Cal. 1 [16 P. 345], the court said that upon such an·application, when the defendant denies the marriage, there must be "satisfactory evidence showing, at least *prima facie*, a marriage, in fact," and "It has been said that it is not necessary to prove a marriage as fully . . . on a preliminary application for a temporary allowance, as will sustain a final decree." (P. 43.) In *Hite* v. *Hite*, 124 Cal. 389 [57 P. 227, 71 Am.St.Rep. 82, 45 L.R.A. 793], the court rejected the *prima facie* rule and applied the preponderance of evidence requirement. The Hite case was distinguished in *Bancroft* v. *Bancroft*, 9 Cal.App.2d 464 [50 P.2d 465], upon the ground that the defendant in the Hite case denied the alleged common law marriage, whereas in the Bancroft

case the plaintiff proved and defendant admitted that a ceremonial marriage had taken place and the parties had assumed the marital relation, which shifted to him the burden of proving the marriage invalid. The court indicated approval, in such a case, of a rule that if the putative wife makes out a reasonably plain case of the existence of marriage she should be furnished with temporary support and suit money, but found that in the case before it the wife had established her marriage by a preponderance of evidence.

In *Thomas* v. *Thomas,* 66 Cal.App.2d 818 [153 P.2d 389], the husband admitted the marriage and claimed it had been terminated by a foreign divorce but failed to offer evidence of the divorce proceeding. The evidence of the marriage and the presumption of its continuance supported the order for temporary support, counsel fees, and costs.

In *Knox* v. *Knox,* 88 Cal.App.2d 666 [199 P.2d 766], the court, in affirming an order disallowing temporary support and suit money (the wife had appeared and participated in the foreign divorce proceeding), expressed the rule in these words: "It therefore became the duty of the court in the instant proceeding, to determine, as a matter of fact, in the exercise of a sound judicial discretion, whether there was reasonable probability of appellant herein successfully attacking the validity of the Nevada divorce, and whether the instant proceeding was instituted by appellant's wife in good faith." (P. 676.)

In *Kalmus* v. *Kalmus,* 103 Cal.App.2d 405 [230 P.2d 57], a denial of temporary alimony, counsel fees and costs was affirmed upon the ground, among others, that the wife's evidence in support of her challenge of a foreign divorce decree satisfied neither the preponderance of evidence rule nor the fair probability rule, whichever might be applied.

In *Bernheimer* v. *Bernheimer,* 103 Cal.App.2d 643 [230 P.2d 17], an order refusing a wife temporary support (upon the ground that a foreign decree divorcing the husband from his former wife was invalid) was reversed for the reason that his conduct in participating in the foreign divorce proceeding and procuring the decree therein precluded him from collaterally attacking that decree. Accordingly, the wife's testimony that a marriage ceremony took place between her and the defendant, was sufficient proof of marriage and shifted the burden of proof to him, a burden he did not meet.

In *Carbone* v. *Superior Court,* 18 Cal.2d 768 [117 P.2d 872, 136 A.L.R. 1260], an order refusing to award temporary sup-

port and suit money in a paternity suit brought under section 196a of the Civil Code was reversed because the trial court erroneously refused to permit the plaintiff to introduce any evidence of paternity. The Supreme Court held that proof of parentage is jurisdictional, just as proof of marriage is jurisdictional in a similar proceeding in a divorce action under section 137, and that in either case the party seeking the order for support or costs must establish the jurisdictional fact by a preponderance of evidence, but that "the proceeding need not be so complete nor the evidence so extensive as upon the trial of the issues of the case and the order therefore does not determine those issues nor affect the final judgment." (P. 772.)

In *Colbert* v. *Colbert*, 28 Cal.2d 276 [169 P.2d 633], the requirement of proof of the marriage (upon a motion to vacate a temporary alimony order, the same as upon an original application for such alimony) is stated in these words: ". . . the evidence necessary to prove a marriage need not be as complete and satisfactory upon an application for temporary support as that required at the time of trial to prove a marriage which is disputed by one of the parties." (P. 280.)

In *Baldwin* v. *Baldwin*, 28 Cal.2d 406 [170 P.2d 670], the wife appealed from a judgment against her in her action for divorce and the husband appealed from an order requiring him to pay her attorney's fees and costs on appeal. The judgment was based upon findings that a prior Nevada divorce decree, which she questioned on jurisdictional grounds, was valid. Both the judgment and the order were affirmed. In respect to the latter, the court said, at pages 416 and 417: "In support of his first contention [that, following a Nevada decree, plaintiff was no longer his wife, and only a wife can be awarded suit money] defendant relies upon statements contained in *Hite* v. *Hite* (1899), 124 Cal. 389 [57 P.2d 227, 71 Am.St.Rep. 82, 45 L.R.A. 793] ; *Carbone* v. *Superior Court* (1941), 18 Cal.2d 768, 771 [117 P.2d 872, 136 A.L.R. 1260] ; and *In re Cook* (1941), 42 Cal.App.2d 1, 3 [108 P.2d 46], to the effect that before alimony or suit money can be awarded, the person seeking it must prove 'existence of the marriage' with the other party to the proceeding. In the Hite and the Cook cases, however, it was the fact or the validity of the original marriage which was in dispute, and in the Carbone case the holdings of the Hite and the Cook cases were discussed by the court in considering the application of an

illegitimate child to enforce support pendente lite from her alleged father. In none of the three cases was an issue presented as to the validity of a divorce decree secured by one party following an admitted marriage to the other. Here the marriage relationship admittedly existed at the time of, and continued for several weeks following, the filing by plaintiff of her divorce complaint in this state, and the chief defense offered by defendant to plaintiff's requests for relief is that he thereafter secured in another state a decree of divorce. It is our view that under such circumstances, and upon a proper showing otherwise, plaintiff should not be denied the payment from defendant of funds to enable her to properly prosecute an appeal from the judgment determining the fact and effect of the Nevada decree. (*Cf. Fisher* v. *Superior Court* (1930), 110 Cal.App. 565, 567 [294 P. 445]; *Stewart* v. *Stewart* (1939), 32 Cal.App.2d 148, 150 [89 P.2d 404].) It is now the law of this state that it is only after such an appeal has been finally determined (or the judgment of a California trial court adjudicating such issue has become final) that the validity or lack thereof of the Nevada decree and its effect—and consequently the marital status and reciprocal obligations of the parties in this state—can be conclusively settled. (*Crouch* v. *Crouch* (1946), *ante*, [28 Cal.2d] p. 243 [169 P.2d 897].)'' (Pp. 416 and 417.)

In *Kopasz* v. *Kopasz*, 34 Cal.2d 423 [210 P.2d 846], appeals in a separate maintenance action were pending from a judgment in favor of the wife and from an order directing the appellant to pay her costs and counsel fees on appeal. She moved to stay the appeal pending his compliance with that order. He resisted on the ground that he was relying on a foreign decree of divorce. In granting the motion, the court said: ''When a valid marriage has been admitted and the issue before the court is the validity of a foreign divorce decree, the trial court may in a proper case grant costs and attorney's fees on appeal until the effect of the foreign decree has been finally determined by the courts of this state. (*Baldwin* v. *Baldwin*, 28 Cal.2d 406, 417 [170 P.2d 670].)'' (P. 424.)

In *Fisher* v. *Superior Court*, 110 Cal.App. 565 [294 P. 2d 445], cited with approval in the Baldwin case, the court denied an application of the husband for a writ to prohibit the trial court from proceeding to enforce an order requiring him to pay the wife temporary support and counsel fees, in

an action brought by her for separate maintenance and to vacate an interlocutory decree of divorce he had obtained in another action. She alleged that he obtained the interlocutory decree through extrinsic fraud practiced upon her and upon the court. The writ was refused upon the ground that the trial court had jurisdiction to proceed. In that regard, the appellate court said: "It becomes a matter of fact for the [trial] court to determine, in the exercise of a sound judicial discretion, whether the petitioner was guilty of perpetrating the kind of fraud which authorizes the judgment to be declared void and of no effect." (P. 567.)

In this state of the decisions it is difficult to formulate a precise rule as to the degree of proof of marriage required upon an application for temporary support in an action for divorce or for separate maintenance. It is clear that the evidence need not be as complete and satisfactory as at the time of trial. ■ When, as here, a valid marriage is admitted and the issue is the validity of a foreign divorce decree, it appears that the trial court has a larger measure of discretion to grant the application than when the fact of the marriage itself is in issue.

■ The evidence received upon such a hearing must, of course, be competent unless its competency is waived by failure of the opposite party to interpose an appropriate objection. ■ We mention this because upon the hearing below plaintiff's counsel sought to elicit from her a statement of what her psychiatrist told her concerning her physical and mental condition at the time she signed certain documents. An objection that such testimony would be incompetent and irrelevant was sustained on both grounds. As hearsay, it was incompetent but not irrelevant. If not hearsay (if the psychiatrist were the witness, for example) it would be admissible.

Our discussion of the appeal from the order terminating the order for temporary support, counsel fees and costs applies with equal force to the appeal from the order denying plaintiff's application for the cost of taking defendant's deposition, which order should be reversed and the proceeding remanded for rehearing. Each of those orders appealed from is reversed.

■ The order refusing to direct defendant to give his deposition is not appealable, although reviewable in an appropriate mandamus proceeding or upon appeal from a final judgment. (See *McClatchy Newspapers* v. *Superior Court,*

26 Cal.2d 386 [159 P.2d 944].)  The appeal from that order is dismissed.

Appellant is to recover costs on all the appeals.

Peters, P. J., and Bray, J., concurred.

The opinion was modified to read as above printed on April 1, 1952.  A petition for a rehearing was denied April 26, 1952, and respondents' petition for a hearing by the Supreme Court was denied May 26, 1952.  Schauer, J., was of the opinion that the petition should be granted.