[Civ. No. 26631.   Second Dist., Div. One.   Apr. 11, 1963.]

BETTY ESTELLE GREEN, Plaintiff and Appellant, v. RULON CUTLER GREEN, Defendant and Respondent.

Gladys Towles Root, Eugene V. McPherson and Philip C. Greenwald for Plaintiff and Appellant.

Ivan E. Lawrence and Ben Adelman for Defendant and Respondent.

LILLIE, J.—Appeal is from judgment entered on an order dismissing an action for divorce under section 437c, Code of Civil Procedure.

Affidavits filed on the motion for summary judgment disclose the following. The parties were married in 1945, and separated in 1953; on August 4, 1953, appellant wife sued for divorce (No. D455586), and on August 13, 1953, obtained a pendente lite order requiring respondent to pay child support and alimony. On March 29, 1954, the parties entered into a property settlement agreement. In April they reconciled; the reconciliation lasted almost four years, during which time respondent supported appellant. They separated in December 1957 when respondent moved to Nevada where he engaged in his occupation as a builder; in February 1958 he sued for divorce (No. 88744) in Las Vegas. In Los Angeles appellant was served with the Nevada action; on advice of her local counsel to contest it, she hired a Nevada attorney, who filed pleadings on her behalf. On July 29, 1958, she went to Las Vegas and personally and through her counsel participated in the trial; she testified but offered no objection to, or evidence to offset, respondent's allegation and testimony of

domicile in Nevada. On her own testimony and "as alleged in her defense and counterclaim" (findings of fact and conclusions of law, Nevada court, July 31, 1958, par. 4), and on respondent's testimony that he had established residence in Nevada and the court's finding thereon (par. 1), the Nevada court on July 31, 1958, granted appellant a divorce. The decree, entered August 1, 1958, awarded her community property, attorneys' fees, child custody and $100 per month child support. Respondent has since complied therewith; until March 1961, appellant also has relied thereon accepting the award of community property and child support thereunder without comment.

Almost three years later, and in March 1961, she caused a writ of execution in the sum of $8,383.68 (arrearage claimed under pendente lite order of August 13, 1953) to be levied against respondent's property. On July 14, 1961, the court on respondent's motion dismissed her divorce action (No. D455586); and on his motion to quash the writ the court on September 22, 1961, found appellant's right to support under the pendente lite order of August 13, 1953, terminated August 1, 1958 (the date of entry of the Nevada decree) and that under the writ of execution only $2,000 was due. (The order is the subject of appeal No. 26341,* this day decided; the order is affirmed.)

Three days later, and more than three years after the entry of her Nevada decree, appellant, on September 25, 1961, filed the within new complaint for divorce in which she alleged the parties separated in 1953, and fraud in the execution of the property settlement agreement on March 29, 1954; she mentioned neither the four-year reconciliation beginning in April 1954, nor her Nevada divorce. Thereafter, respondent moved the lower court for summary judgment. Both he and his counsel claimed that her complaint was filed in bad faith with malicious intent to coerce payment of the balance of the $8,383.68.

Appellant opposed the motion with several affidavits; only her own sets up facts of her appearance in the Nevada action. She declared: that in January 1955 she learned respondent had secreted assets when he executed the property settlement agreement of March 1954; that during the next four years he failed to support her, belittled her and threatened to leave her destitute; that *in 1957* (while still living with respondent), "by reason of defendant's continuous

*Green* v. *Green, ante,* p. 31.

harassment, dire financial and living distress'' she became ''so mentally upset, disturbed and emotionally troubled'' that she ''was unable to comprehend, to act or think intelligently or know what to do''; that *at this time* she consulted two attorneys; that *thereafter*, in December 1957, respondent left, telling her he was leaving California ''for good'' and going to live in Nevada; that in February of 1958, in Los Angeles, she received the Nevada divorce papers and immediately went to a lawyer who declined to represent her but advised her to ignore the Nevada action and secure a lawyer to reopen her Los Angeles case; that she then retained local counsel, Edward Rosslyn, to represent her and instructed him to reopen the pending Los Angeles case; that he prepared papers which she signed believing they were for the Los Angeles proceedings; that later Rosslyn advised her it was essential to appear in the Nevada action, which she did not want to do; that Rosslyn informed her he had hired a Nevada attorney for her; that this was the first knowledge she had that an appearance had been made for her in the Nevada action; that the retaining of Nevada counsel and the filing of papers in the Nevada proceedings were done without her knowledge or consent; that ''upon the urging of attorney Rosslyn'' she personally appeared in the Nevada court and was awarded a divorce.

Appellant contends the trial court erred in granting the motion for summary judgment in that her affidavits raised a triable issue of fact — whether she had been induced by fraud or duress to make her appearance in the Nevada action. While, on its face, appellant's complaint does not challenge the validity of the Nevada decree, it must be conceded that if the decree be given full faith and credit, appellant has not since August 1, 1958, been married to respondent and the complaint was properly dismissed. Appellant has sought to pattern her affidavit to fit the exception stated in *Gromeeko* v. *Gromeeko*, 110 Cal.App.2d 117 [242 P.2d 41], and *Estate of Raynor*, 165 Cal.App.2d 715 [332 P.2d 416], but assuming all facts alleged therein to be true, it raises no triable issue of fact, and the general rule of *Sherrer* v. *Sherrer*, 334 U.S. 343 [68 S.Ct. 1087, 92 L.Ed. 1429, 1 A.L.R.2d 1355], and *Coe* v. *Coe*, 334 U.S. 378 [68 S.Ct. 1094, 92 L.Ed. 1451, 1 A.L.R.2d 1376], and the California authorities following these cases controls.

The Supreme Court in *Sherrer* v. *Sherrer* (1947) 334 U.S. 343 [68 S.Ct. 1087, 92 L.Ed. 1429, 1 A.L.R.2d 1355], ruled

"that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree." (Pp. 351, 352.) In *Sherrer, supra,* defendant answered his wife's Florida divorce action and testified at the trial, but his counsel did not cross-examine her or offer rebuttal evidence to offset her testimony of Florida residence; she was granted a divorce. Later, in a proceeding in Massachusetts, the domicile of the parties, defendant challenged the Florida decree; the Massachusetts court found it to be void. The United States Supreme Court reversed the ruling, found the determination of the jurisdictional issue of the wife's domicile to be res judicata and held that the Florida decree was entitled to full faith and credit in Massachusetts. In the companion case of *Coe* v. *Coe,* 334 U.S. 378 [68 S.Ct. 1094, 92 L.Ed. 1451, 1 A.L.R.2d 1376], is a factual situation similar to the one at bar. The husband, domiciled in Massachusetts, filed for divorce in Nevada. The wife went to Nevada to contest the action and answered the same, but admitted the allegation of defendant's residence; both parties were present at the trial and the wife was granted a divorce. Later in Massachusetts she brought contempt proceedings against him for failure to comply with a prior support order of the Massachusetts court; the Supreme Court reversed the state court ruling which refused to give the Nevada decree full faith and credit. (334 U.S. 378.)

California has followed the rule of *Sherrer* v. *Sherrer, supra,* and *Coe* v. *Coe, supra;* and of these cases our Supreme Court has said: "The test thereof is not whether the issue of jurisdiction was actively litigated in the court rendering the divorce decree. It is sufficient if the defendant has participated in the proceedings and has full opportunity to litigate the issue. If so, the decree is binding even though a relitigation of the question of jurisdictional residence requirements in another state might result in a finding that the domiciliary claim was fraudulently asserted for the purpose of obtaining a decree which as a matter of policy could not be procured in the state of actual domicile. Therefore where, as here, the finding of the requisite jurisdictional facts was made in divorce proceedings in another state in which the defendant appeared and participated, and the decree has become final, it must be

given full faith and credit in the courts of this state."
(*Heuer* v. *Heuer*, 33 Cal.2d 268, 271 [201 P.2d 385]; also
cited in *Estate of Raynor*, 165 Cal.App.2d 715 [332 P.2d
416].)

However, "[o]ne recognized exception to the rule enunci-
ated in the *Sherrer* and *Coe* cases is where the appearance of
the defendant is induced by fraud or duress. This rule is
recognized in California. (See *Gromeeko* v. *Gromeeko*, 110
Cal.App.2d 117 [242 P.2d 41]; *Hayden* v. *Hayden*, [*sic*],
*supra* [*Haden* v. *Haden*, 120 Cal.App.2d 722 (262 P.2d
73)].)" (*Estate of Raynor*, 165 Cal.App.2d 715, 721-722
[332 P.2d 416].) Appellant relies particularly on *Gromeeko*
v. *Gromeeko*, 110 Cal.App.2d 117 [242 P.2d 41], in which the
wife attacked the husband's Nevada decree on the ground her
appearance in that proceeding was induced by his fraud and
duress. He told her that one Elena was pregnant by him; and
falsely represented to her that he loved her, but because of the
embarrassment, financial ruin and ostracism they would suffer
if he did not do so, he had to divorce her in Nevada and
temporarily marry Elena, and that he would thereafter divorce
Elena and remarry her. A resident of San Francisco, he sued
in Nevada and was granted a divorce. Because she was "terri-
fied" by what he told her, believed his representations and
promises, and became hysterical and mentally incapacitated
by his portrayal of ruin if he did not divorce her, her husband
was able to, and did, exert sufficient "influence and control"
(p. 120) over her to compel her to execute "certain docu-
ments (including an authorization of counsel to represent
her) at his demand" (p. 122) and appear in and answer the
Nevada proceeding. Said the court at pages 122-123: "It is
true that if plaintiff did appear and participate in the Nevada
action, she could not later collaterally attack the decree ren-
dered therein upon issues (such as Andrew's acquisition of
residence in Nevada) litigated and decided therein (*Heuer*
v. *Heuer*, 33 Cal.2d 268 [201 P.2d 385]; *Estate of Scho-
maker*, 93 Cal.App.2d 616 [209 P.2d 669]; *Daut* v. *Daut*, 98
Cal.App.2d 375 [220 P.2d 63]). In each of those cases, as
in *Sherrer* v. *Sherrer*, 334 U.S. 343 [68 S.Ct. 1087, 1097, 92
L.Ed. 1429, 1 A.L.R.2d 1355], and *Coe* v. *Coe*, 334 U.S. 378
[68 S.Ct. 1094, 1097, 92 L.Ed. 1451, 1 A.L.R.2d 1376], the
party who later unsuccessfully sought collaterally to attack
a foreign decree did in fact personally appear in the foreign
divorce action. In contrast, in the present action, the plain-
tiff seeks to show that she did not authorize anyone to appear

for her in the Nevada action, that her seeming appearance therein was the result of fraud practiced upon her and the Nevada court by *the defendant herein.* If she proves these allegations she will be in a position to tender proof (1) that her signing of the dismissal of her earlier California divorce action was done under circumstances which negative that act as an estoppel against the position she takes in this action, (2) that Andrew did not acquire a Nevada residence, and (3) that the Nevada decree was procured through collusion and fraud. (See *Wolff* v. *Wolff*, 134 N.J.Eq. 8 [34 A.2d 150.)'' (Italics added.)

A similar claim of fraud was made by the wife, but not sustained, in *Estate of Raynor*, 165 Cal.App.2d 715 [332 P.2d 416]. She asserted that her signature to her appearance and waiver filed in the Nevada action ''was procured by *fraud of Cal* (husband).'' (Italics added.) (P. 717.) And in *Aldabe* v. *Aldabe*, 209 Cal.App.2d 453 [26 Cal.Rptr. 208], the acts of fraud which appellant claimed resulted in no ''real'' participation by her in the Nevada action and prevented her from having full opportunity to litigate the issue of jurisdiction ''were not solely the product of the conduct of her own attorney. They were participated in by Charles (husband) and by Charles' attorney.'' (209 Cal.App.2d 453, 473.) For 17 years the parties lived on a ranch partly in California and partly in Nevada; it is undisputed that their residence was physically located in California. While she told this fact to her own counsel, Streeter, he nevertheless told her she could secure a divorce in Nevada, prepared the divorce papers accordingly and filed suit therein. Her husband filed an answer and counterclaim in the Nevada action through his attorney, Adams, who had previously represented the Aldabe family, alleging both parties to be residents of Nevada. Shortly thereafter she discharged Streeter as her counsel and through Attorney Smith filed a divorce action in California. She asked Streeter to dismiss the Nevada action. He claims he told her he could not because of the counterclaim on file. Thereafter, without authorization of appellant, knowing he no longer represented her and without her knowledge and consent, Streeter entered into a stipulation with Adams dividing certain monies the latter held in trust for the parties, for their fees, and permitting the husband's counterclaim in the Nevada action to be amended to allege the ranch to be his separate property. Adams then instituted an ex parte proceeding in the Nevada court to restrain appellant from proceeding

with the California action, and Streeter, without appellant's authority, knowledge or consent, stipulated the divorce could be heard in Nevada. When the action was heard in the Nevada court, Adams gave notice to Streeter; neither appellant nor Smith were notified and, believing the action had been dismissed by Streeter upon her request, did not appear. However, Streeter appeared at the Nevada trial and withdrew after advising the court both parties resided in Nevada and deprecating appellant's California suit. The husband testified he lived on a ranch partly in California and partly in Nevada and voted and registered his motor vehicles in Nevada but said nothing about actually residing in California, which Streeter, he and his attorney well knew. The Nevada court found both parties were residents and awarded him the divorce and the ranch. On the husband's motion to terminate alimony pendente lite and dismiss the divorce action in California, appellant made an offer of proof that she was induced to file her suit in Nevada by the misrepresentations and advice of her own counsel, Streeter, and her husband's lawyer, Adams, who knew of his California residence, that she could receive a divorce in Nevada; that their subsequent actions — Streeter's failure to withdraw as her attorney and his continuing to purport to represent her, his entry into a stipulation without her authorization, knowledge and consent, his failure to notify her of the Nevada trial and his unauthorized representation to the Nevada court the parties were domiciled in Nevada and she did not intend to appear — were calculated to and did prevent her from having an opportunity to contest the issues in Nevada; and that Streeter, Adams and her husband perpetrated a fraud on the Nevada court representing to it he had a Nevada domicile, knowing he did not. The offer of proof was rejected; in reversing the order terminating temporary alimony and the judgment of dismissal, the court held that inasmuch as the evidence would have justified the trier of fact to find that appellant's "participation" in the Nevada court was not "real" and did not accord her "full opportunity to contest the jurisdiction issue," and inasmuch as the absence of proof of domicile appears on the face of the record in the Nevada proceeding (before the lower court) subjecting the decree to collateral attack in the Nevada court, the rule in the *Sherrer* case, *supra,* could not apply and the lower court erred in the rejection of the evidence.

In the *Gromeeko, Raynor and Aldabe* cases, the claimed

duress or fraud which induced the wife to appear in the foreign action was the direct result of either the husband's misrepresentations, personal influence over her, promises, advice or demands, or those of his attorney, or the fraudulent imposition of her own counsel designed to induce the wife's conduct in connection with the Nevada proceeding. ■ This is quite a different situation than the one presented herein by appellant's affidavits which clearly reveal that her authorization of Nevada counsel and her appearance and personal participation in the Nevada divorce were not induced by any act of respondent or his counsel or by any act for which either was responsible; but were the direct result of legal advice of her own lawyer, which her affidavit does not show was motivated by fraud.

■ "The trial court's function in considering a motion for summary judgment is to ascertain whether there exists a triable issue of fact. (*McHugh* v. *Howard,* 165 Cal.App.2d 169 [331 P.2d 674]; *Dawson* v. *Rash,* 160 Cal.App.2d 154 [324 P.2d 959]; *Doyle* v. *Hibernia Bank,* 156 Cal.App.2d 16 [319 P.2d 412]; *Enos* v. *Foster,* 155 Cal.App.2d 152 [317 P.2d 670].) ■ Whether a triable issue of fact exists is determined by the sufficiency of the affidavits of the parties. (*Doyle* v. *Hibernia Bank, supra*; Code Civ. Proc., § 437c; *Dorsey* v. *City of Los Angeles,* 132 Cal.App.2d 716 [282 P.2d 997].)" (*Beach* v. *Arblaster,* 194 Cal.App.2d 145, 160 [14 Cal.Rptr. 854].) ■ Since the validity of a summary judgment is to be determined solely by the sufficiency of the affidavits (*McComsey* v. *Leaf,* 36 Cal.App.2d 132 [97 P.2d 242]; *Dudum* v. *City of San Mateo,* 167 Cal.App.2d 593 [334 P.2d 968]), this court will consider no facts other than those which were before the lower court; "[w]e are limited to the facts shown by the affidavits (*Kimber* v. *Jones, supra,* 122 Cal.App.2d 914 [265 P.2d 922]), and are to determine only whether the facts *so shown* give rise to a triable issue (*Coyne* v. *Krempels, supra,* 36 Cal.2d 257 [223 P.2d 244].)" (Italics added.) (*Dudum* v. *City of San Mateo,* 167 Cal.App.2d 593, 598 [334 P.2d 968].)

■ Thus any new matter urged upon us cannot be examined; this applies not only to any additional facts "which might be adduced at a trial" or she claims she can prove (A.O.B., pp. 6, 9), but to appellant's present claim, not raised on the motion and wholly unsupported by her affidavits, that the Nevada decree is susceptible to collateral attack in Nevada (A.O.B., p. 9) because the court "was without power to grant *Appellant* a divorce on the basis of the pleadings submitted to the court in the Nevada proceeding." (A.O.B., p. 10.) (Inciden-

tally, the findings of fact and conclusions of law of the Nevada court do not bear this out. (Par. 4.) ) ▪ Moreover, the party opposing the motion has the burden of showing the existence of a triable issue of fact. (*Miller* v. *Joyce,* 138 Cal.App.2d 356 [291 P.2d 963].) ▪ If appellant's affidavits set forth no facts sufficient to establish her alleged cause of action, no issue of fact has been raised and summary judgment is proper (*Hardy* v. *Hardy,* 23 Cal.2d 244, 248 [143 P.2d 701]) ; and so it is in the case at bar. ▪ Assuming all facts set up in appellant's affidavits to be true, we conclude that they, in no respect, create a situation to which the exception to the rule of the *Sherrer* and *Coe* cases, *supra,* applies; thus no triable issue of fact has been presented, appellant has failed to establish her alleged cause of action, and the dismissal of the complaint and entry of summary judgment were proper. This appeal is predicated mainly on the two cases of *Gromeeko* v. *Gromeeko,* 110 Cal.App.2d 117 [242 P.2d 41], and *Aldabe* v. *Aldabe,* 209 Cal.App.2d 453 [26 Cal.Rptr. 208]. But appellant's position is without merit, for while the evidence in those cases was such that the lower court could have found that the wife was induced by fraud or duress to appear and participate in the Nevada action, in the instant case, limited by the facts asserted in her affidavit and assuming them to be true, she has failed to make any factual showing of either fraud or duress or that the Nevada decree might be subject to collateral attack in Nevada.

Appellant's affidavit, given all possible credence, fails to support her claim that she was induced by respondent's fraud and duress to appear in the Nevada proceeding. She alleges nothing to show she was in any way coerced, compelled, influenced, induced, or imposed upon by respondent to appear in the Nevada action. Her "mental duress," which she alleges consisted of financial distress caused by respondent's failure to properly support her, not only appears to be entirely unrelated to her appearance in the Nevada proceeding but began in January 1955, almost three years before their separation; and while she claims it continued past their separation through the "Nevada episode," her situation was not unlike that of thousands of women separated from their husbands, in which there is not enough money to support two households. (However, she admits he paid her $650 during the seven months pending the Nevada divorce and she occupied the home therein later awarded to her.) But appellant does

not claim, nor do her facts show, that at any time before or from December 1957 to July 29, 1958, respondent or his counsel ever saw appellant, discussed with her a Nevada divorce, made any demands upon her, gave her any advice or counsel, made any promises, threats or misrepresentations to her concerning the divorce, told her to do any act in connection with the proceeding, asked her to execute any papers, in any manner imposed upon her or had any influence or control over her. The only thing she alleges he did pending the Nevada divorce, besides failing to give her the support to which she felt she was entitled, consisted of calling her ''on several occasions,'' at which time he ''laughed'' about her financial distress. A lawyer she personally chose gave her legal advice, and of her own free will she followed it—appeared in the Nevada proceeding, hired a Las Vegas lawyer, travelled to Nevada, actively participated in the trial, testified on her own behalf, had full opportunity to contest the issue of jurisdiction, and secured a divorce upon her own request. (Findings of fact and conclusions of law, Nevada court.) There appears to have been no rush, pressure or emergency involved in the Nevada proceeding; appellant, 500 miles away from respondent in Las Vegas, had six months in which to decide what she wanted to do about the Nevada action; she did what any normal person would have done—consulted counsel and followed his advice. While appellant has not argued that her lawyers were guilty of fraud or duress, she has intimated the same in framing her contention on page 6 of her opening brief. However, on the facts she has alleged in her affidavits she could not seriously advance such a position, for while she may not have wanted to pursue the course of legal action made necessary by respondent's divorce proceeding and which her attorneys advised her to take to protect her rights in the Nevada court, or she now regrets having appeared and participated in Nevada and secured the divorce, or her present counsel, who represents her for the first time on this appeal, in the light of recent developments, disagrees with the advice her former counsel gave her, it nevertheless appears that her lawyers were competent, acted in her best interest and advised her in the utmost good faith. Her affidavit shows neither fraud nor duress on their part, and in no respect approaches the situation found in *Aldabe* v. *Aldabe*, 209 Cal. App.2d 453 [26 Cal.Rptr. 208].

Having concluded that appellant's affidavits fail to show she had been induced by fraud or duress to make her appearance in the Nevada action, the decree must be given full

faith and credit under the *Sherrer* and *Coe* cases, *supra*; and it appearing that appellant personally and through counsel appeared and participated in the Nevada action and had full opportunity to litigate the jurisdictional issue (*Heuer* v. *Heuer*, 33 Cal.2d 268 [200 P.2d 385]), and that no proof was offered that the Nevada decree is susceptible to collateral attack in Nevada, that portion of her affidavit and the declarations of Dell'era and Arnold showing respondent to be a resident of Reseda, California, and not a domiciliary of Nevada, do "nothing more than create a conflict upon the mooted point." (*Baldwin* v. *Baldwin*, 28 Cal.2d 406, 410 [170 P.2d 670]; *Heuer* v. *Heuer*, 33 Cal.2d 268 [201 P.2d 385].)

In view of our conclusion, we deem an extended discussion of appellant's lack of diligence in asserting "fraud or duress" and any resulting prejudice to respondent, to be unnecessary. However, inasmuch as nothing in her affidavit suggests that her "mental duress" lasted one day beyond the date of the Nevada trial, borrowing the language in *Haden* v. *Haden*, 120 Cal.App.2d 722 [262 P.2d 73], we comment that she waited three years to expend the fruits of the Nevada decree before "charging she had been swindled by duress and a fraud had been committed on the court of Nevada." (P. 726.)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.