165 Cal.App.2d 715 (1958)
Estate of CLAYTON ASHLEY RAYNOR, Deceased. KAY RAYNOR, Appellant,
v.
STOCKTON SAVINGS AND LOAN BANK (a Corporation), Respondent.
Civ. No. 9428. 
California Court of Appeals. Third Dist. 
Dec. 5, 1958.
 Walter McGovern and Wadsworth & Souza for Appellant.
 Jacobs, Cavalero & Dietrich, D. R. Jacobs and Mark S. Bray for Respondent.
 WARNE, J. pro tem. [fn. *]
 This is an appeal from an order appointing Stockton Savings and Loan Bank, the nominee of Cora Raynor, administrator of the estate of Clayton Ashley Raynor, deceased.
 The actual contest in this matter is between two women, Kay Raynor, hereinafter referred to as Kay, and Cora Raynor, hereinafter referred to as Cora, each of whom claims to be the surviving spouse of the decedent, hereinafter referred to as Cal. Each sought letters of administration.
 Cal and Cora were married in 1927 and 18 years later on June 4, 1946, Cal obtained a divorce from Cora in Nevada. The following day, June 5, 1946, Cal married Kay in Nevada and they then drove to California where on June 20th Cal entered into a contract to purchase an apartment house in Tracy. The purchase of the apartment house was completed on July 6, 1946. On June 21, 1946, Cal returned to Nevada, where on June 27, 1946, just 22 days after marrying Kay, he obtained a Nevada judgment of divorce from her. He then returned to California and continued to live with Kay, whom he held out as his wife until his death, although he remarried Cora on November 30, 1946, which according to Kay was unknown to her. This latter marriage was never dissolved. Kay contends that the Nevada judgment of divorce dissolving her marriage to Cal was invalid.
 A few days after Cal returned to Nevada, Kay received a letter from Cal's attorney enclosing a document entitled "Appearance and Waiver," which was later filed in the divorce action. The document, after reciting the title of the court and the cause, reads: *717
 "Appearance and Waiver"
 "The undersigned, named as defendant in the above entitled action, hereby consents that when a complaint is filed by the above named plaintiff seeking an absolute divorce from the undersigned in the above named Court, this instrument will constitute an appearance in that action by the undersigned, and that the undersigned does hereby submit herself to the jurisdiction of the Sixth Judicial District Court of the State of Nevada, in and for the County of Humboldt."
 "Said defendant hereby waives all time to demur, answer or otherwise plead in any such action ..."
 This document was signed and acknowledged by Kay before a notary public in Stockton, California, and then mailed to Cal's attorney. It was filed in the divorce proceedings.
 In his deposition Sanford C. Bunce, Cal's attorney, who in 1946 maintained a law office in Lovelock, Nevada, testified that he represented Cal in the divorce proceedings filed in the month of June, 1946, and that said "Appearance and Waiver" was mailed to Kay, with a one dollar bill to defray the expense of notary fees and a self-addressed stamped envelope for the return of said instrument after it had been executed by her. A carbon copy of his letter was produced and a photostat thereof is in evidence. The letter, after advising Kay that Cal had retained Attorney Bunce as his counsel in a divorce proceeding to be instituted in the near future, and of the above mentioned enclosures, requested her to sign the "Appearance and Waiver" before a notary public and that she then have the notary public complete the acknowledgment, affix his or her official seal thereto. The letter then stated: "You may then return said instrument to me and I will cause same to be filed at the time Mr. Raynor institutes his divorce proceedings." While Kay claims she signed the "Appearance and Waiver" without reading the document and that her signature was procured by the fraud of Cal, there is substantial evidence in the record from which a reasonable inference may be drawn that Kay signed the Appearance and Waiver knowingly and voluntarily with full understanding of the effect of her act. She testified that she received a "Letter" from Attorney Bunce from Lovelock, Nevada; that she then took a bus from Tracy to Stockton, carrying the unopened letter with her; that upon arrival in Stockton she found a notary public a short distance from the bus depot; that the notary public showed her where to sign the document, and upon her (Kay's) request, mailed the Appearance and *718 Waiver to Attorney Bunce. Kay denied reading the Appearance and Waiver. Concerning the transaction, Kay further testified: "Q. Now, when you received the letter from Mr. Bunce, or the envelope from Mr. Bunce, would you state that the original of this letter definitely was not in that envelope? A. I don't know. Q. You don't know? A. Because I didn't open it--I opened it and she took--she gave it to me like this and she said 'Sign here' and she had it. I don't remember how she had it. She said 'Sign here' and that was all. She didn't say anything and I didn't say anything. And I said 'Would you mail this for me?' because I had to take the next bus back." Her reason for going to Stockton to acknowledge the instrument is not shown in the record.
 On cross-examination she denied seeing a dollar bill and envelope returned self-addressed to Attorney Bunce or the letter of transmittal enclosed from Attorney Bunce, all of which were contained in the envelope according to the deposition of Attorney Bunce. However, when she was confronted with the envelope addressed to Attorney Bunce, she admitted that she personally crossed out the words "Tracy, California" and had written the words "Stockton, Calif., Gen. Del." thereon as a return address. The notary public before whom Kay executed the Appearance and Waiver was deceased at the time of the trial and this fact was known to Kay. Obviously, the trial court did not believe Kay's testimony concerning her claimed lack of knowledge of the contents of the letter or that she did not know she was signing an Appearance and Waiver to be filed in the divorce proceeding.
 Further, statements made to Wallace Raynor and Patricia Whittemore, the son and daughter of Cal, a few days after Cal's death, are of some significance. The record discloses that both children had known of the relationship between their father and Kay for some time and out of concern for their mother had kept this information from her. After their father's death, Wallace and Patricia traveled to Tracy to arrange to have their father's body sent to Utah for burial and while there contacted Kay in reference to their mission. Wallace testified: "I mentioned to her once that I had intended to bring the body back to Utah, and Kay acted a little reluctant. And, I said 'Well, Kay, you know I can do it.' And she said to me 'Yes.' " Further recognition of knowledge by Kay that Cora was the wife of decedent is found in the testimony of Patricia: "I told Kay Raynor that my mother had instructed me to bring home the income tax reports that my *719 father had ready because she had to file her Federal Income Tax and Kay told me, she said 'Yes, I know, Pat, I have them and I will give them to you.' ... But she said 'if you love a man as much as I love your father, Pat, you could live with him no matter how it had to be.' "
 [1a] The weight of the evidence and the inferences to be drawn therefrom were matters for the trial court to determine and we feel that the record amply supports the trial court's conclusion that Kay had full knowledge of the effect of her act when she signed the Appearance and Waiver.
 Appellant, Kay, contends that the Nevada decree severing her marital ties with Cal was void because neither party was domiciled in Nevada at the time Cal obtained the divorce. [2] While it is true that only the state of a domicile has jurisdiction to grant a divorce, the rule has been established that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the court of another state where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such cause or attack in courts of the state which rendered the decree. (Sherrer v. Sherrer, 334 U.S. 343 [68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355]; Coe v. Coe, 334 U.S. 378 [68 S.Ct. 1094, 1097, 92 L.Ed. 1451, 1 A.L.R.2d 1378]; Johnson v. Muelberger, 340 U.S. 581, 586 [71 S.Ct. 474, 95 L.Ed. 552].) The California Supreme Court, in commenting on the Sherrer case, has said that the test is not whether the issue of jurisdiction was actively litigated in the court rendering the divorce decree, but whether the defendant has participated in the proceedings and had full opportunity to litigate the issue. (Heuer v. Heuer, 33 Cal.2d 268 [201 P.2d 385].)
 In Sherrer v. Sherrer the wife went from Massachusetts to Florida and sued for divorce. The husband appeared in the action personally and by counsel. The wife was granted a divorce. She received custody of the minor children pursuant to the parties' stipulation read into the record. The husband returned to Massachusetts and sought a judicial declaration that the divorce and subsequent remarriage of the wife were invalid. A decree in his favor was affirmed by the Supreme Judicial Court of Massachusetts.
 In Coe v. Coe the wife obtained an award of support in a Massachusetts court. The husband journeyed to Nevada and *720 there instituted divorce proceedings. The wife went to Nevada to contest the husband's action and to obtain a divorce for herself. She filed an answer denying other allegations, but admitting the allegation as to the husband's residence. Both parties were present personally and by counsel at the trial. The wife was granted a divorce. She returned to Massachusetts and brought contempt proceedings against the husband for failure to comply with a prior support order. A contempt order based on a holding of the invalidity of the Nevada decree was affirmed on appeal.
 The Supreme Court of the United States reversed in each case.
 In the Sherrer case, page 351, the Supreme Court held that after the domicile issue had been redetermined by the courts of another state, the Florida court had jurisdiction to determine the question of its jurisdiction and "that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree." In the Coe case the question of domicile was also relitigated by the court of a sister state and the Supreme Court held that as to the parties the issue was res judicata and the courts of the second state were required to give full faith and credit to the decree.
 [1b] In both the Coe and Sherrer cases, the parties participated and had an opportunity to litigate the question of domicile. The question as to whether the rule of the Sherrer and Coe cases includes a situation in which the nonresident defendant merely entered his or her appearance in the divorce proceedings, without any other participation therein, has not yet been squarely decided by the Supreme Court of the United States. However, the reasoning of the Sherrer and Coe cases, which turns on the nonresident defendant's opportunity to raise the issue of domicile, seems to indicate that entry of appearance, of itself, satisfies the Sherrer and Coe rule. (See Anno. 28 A.L.R.2d 1303, 1320-1321.) In California it has been indicated, if not held, that the rule is the same and we are also of that opinion. In Haden v. Haden, 120 Cal.App.2d 722 [262 P.2d 73], the husband, after entering into a property settlement with his wife, went to Nevada where he filed for *721 divorce on April 30th. On May 7th his wife filed her general appearance and waiver of service of summons. The husband obtained a divorce and then returned to California, and sued for divorce in California, which was denied. Two questions were presented on appeal. The first question was whether the filing of the general appearance and waiver of summons by the wife was sufficient participation by her to validate the judgment. The court held that the decree was entitled to full faith and credit even though the wife was not represented by counsel and no evidence was presented on her behalf in the Nevada court. The court said: "A judgment presumes jurisdiction over the subject matter and over the persons. It is only where the defendant spouse has neither appeared nor been served in the other state that the California court can reopen the issue of domicile." It held also that a person appears when he " 'gives the plaintiff written notice of his appearance' or answers or demurs," and that by appearing the wife submitted herself to the jurisdiction of the court. The only material fact that is different in the instant case is that Kay signed and returned a waiver and appearance to the attorney for Cal prior to the time any action had been filed.
 Appellant argues that the signing of the appearance and waiver before the divorce action was commenced is alone sufficient to render it ineffective. While we have been unable to find any California case wherein this question has been determined, there is persuasive authority in other states holding contrary to appellant's contention.
 In Drinkwater v. Drinkwater (D.C.), 111 F.Supp. 559, the court held that a divorce decree was entitled to full faith and credit even though defendant had signed her answer three months previous to the filing of the complaint. In Jacobs v. Ellet, 108 Utah 162 [158 P.2d 555], the court issued a writ of mandate to compel the trial court to enter default in a divorce action wherein the trial court had refused to enter the default on the grounds that the defendant's appearance and waiver had been executed five days before the complaint was filed, and in Vayette v. Myers, 303 Ill. 562 [136 N.E. 467], the court held that the decree of divorce was valid even though defendant had signed appearance before the filing of the complaint. (See also cases collected in 159 A.L.R. 111.) We conclude that the trial court was correct in giving full faith and credit to the Nevada decree.
 One recognized exception to the rule enunciated in the Sherrer and Coe cases is where the appearance of the defendant *722 is induced by fraud or duress. This rule is recognized in California. (See Gromeeko v. Gromeeko, 110 Cal.App.2d 117 [242 P.2d 41]; Hayden v. Hayden, supra.) Prior to receiving the letter from Cal's attorney, as hereinabove mentioned, Kay received a letter from Cal which contained the following: "Now, Honey, all will be O.K. You get the papers Monday or Tuesday sure, General Delivery, Tracy. ... You can find a notary public day or night. ... He is making up the escrow to you of the property, and we have to sign it together at the bank in Tracy." Kay testified, as heretofore stated, that she never received the letter from the attorney, claimed to have been enclosed with the document, and that she did not read the document; that after she received the envelope containing the document she went to a notary public where she opened the communication and gave it to the notary who instructed her where to sign; and that she did not know what she signed. As we have already stated, the trial court was not required to believe her testimony concerning that transaction or that she was induced through fraud to sign the waiver. Apparently Cal's letter was in reference to the escrow. The language, "He is making up the escrow to you of the property, and we will have to sign it together at the bank in Tracy" so indicates.
 [3a] The only remaining question is whether or not the trial court acted beyond the issues when it determined that Kay was not an heir of Cal's in a contest for letters of administration. [4] It is the duty of the court to determine which contestant is entitled to letters of administration and in determining such question, the question of descent is necessarily involved. (Estate of Paulsen, 179 Cal. 528 [178 P. 143]. See also Estate of Cover, 188 Cal. 133 [204 P. 583]; Estate of Schwartz, 79 Cal.App.2d 301 [179 P.2d 863]; Estate of Hensgen, 80 Cal.App.2d 78 [181 P.2d 69].) [3b] In determining whether or not the Nevada decree was entitled to full faith and credit or whether it was invalid because of fraud, the trial court had to pass merely on the question whether Kay had knowledge of the divorce and its validity. If she had knowledge of the divorce and it was valid, she would not be his wife nor could she be a putative wife. The phrase "putative marriage" is applied to a matrimonial union which has been solemnized in due form and celebrated in good faith, but which by reason of some legal infirmity is void or voidable. Here the divorce dissolved the bonds of matrimony and she couldn't be a putative wife because she did not go through a *723 marriage ceremony after Cal received his divorce from her, and, therefore, could not be an heir under the theory that a putative wife takes as an heir. (Estate of Krone, 83 Cal.App.2d 766 [189 P.2d 741].) In deciding the divorce was valid, the trial court necessarily passed on the question whether Kay could inherit Cal's estate, and once the court decided the divorce was valid it determined Kay was not an heir. Therefore, we feel that the trial court did not err in determining in these proceedings that she was not an heir.
 The order appealed from is affirmed.
 Van Dyke, P. J., and Schottky, J., concurred.
NOTES
[fn. *] *. Assigned by Chairman of Judicial Council.